# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## THIRD GRAND DIVISION.

### SEPTEMBER TERM, 1868.

RALPH S. NORRIS and HIRAM W. FOLTZ

*v.*

$0 \backslash \beta$       BENJAMIN O. TAYLOE.

1. AGENCY—*liabilities of agent to principal—agent in treating with principal—must disclose all things connected with his agency.* Where a party accepts the position of an agent to take charge of the lands of his principal, collect the rents and royalty, and pay the taxes, a fiduciary and confidential relation is thereby created in regard to everything relating to such lands; and in treating with his principal for the property, the agent is bound to make the fullest disclosure of all matters connected therewith, within his knowledge, which it is important for his principal to know, in order to treat understandingly.

2. SAME—*concealment of facts by an agent—avoids the sale.* And when an agent, occupying such a relation to his principal, purchases the property at a

3—49TH ILL.

18     Norris *et al. v.* Tayloe.     [Sept. T.,

Statement of the case. Opinion of the Court.

greatly inadequate price, by concealment of facts and information, relating thereto, which he was bound to disclose, the sale will be set aside.

3. Same—*of a party purchasing from the agent with knowledge of the agent's fraud.* And when a party purchases from the agent, a portion of the property so purchased from the principal, with full knowledge of the transactions between the agent and his principal, the sale cannot be sustained.

Appeal from the Circuit Court of Jo Daviess county; the Hon. Benjamin R. Sheldon, Judge, presiding.

This was a bill in chancery, filed in the court below by the appellee, against the appellants, to set aside two deeds, one made and executed by appellee to the appellant, Norris, for certain lands situated in Jo Daviess county, and the other made and executed by the appellant, Norris, to his co-appellant, Foltz, for an undivided half of the same lands, and also for an accounting as to the mineral rents and mineral taken from the lands, both before and after the conveyance to Norris. The bill alleges that appellant, Norris, was the agent of appellee in the management of these lands, and that in his negotiations for the purchase of the same, he did not make such disclosures in reference to the value thereof, as it was his duty to have done, he occupying a fiduciary relation to appellee, and thereby procured the same at a greatly inadequate price. The court below rendered a decree in favor of the complainant, and the defendant appealed to this court. The further facts in this case are stated in the opinion.

Mr. E. A. Small, for the appellants.

Mr. D. W. Jackson, for the appellee.

Mr. Chief Justice Breese delivered the opinion of the Court:

Unless it is established that Varnell, in this transaction, was the agent of appellant, Norris, this decree cannot stand, and to that we have principally directed our attention.

What was the position of these parties ? ˌTayloe, the owner of the land purchased for him by Varnell, was a non-resident, had never seen the land, and knew nothing about it, save through Varnell's statements. Varnell became, thereafter, Tayloe's agent, and in answer to the question, " What was the scope of your agency ?" he answered, that the list of lands was placed in his hands by Tayloe himself, for the purpose of seeing that the taxes were paid from year to year; that he also had a general supervision, to see that the lands were not trespassed upon, and for this purpose he was empowered by Tayloe to employ other parties in other counties.

On a visit to these lands in the latter part of the Spring of 1863, with appellant, Norris, he adjusted some difficulties that had arisen between the miners on the land, and made arrangements with Norris to pay the taxes and look after the land. At this time there were several parties digging and prospecting on the land when he was there. Norris himself was then there, digging for lead ore. Varnell left the lands in charge of Norris, authorizing him to take general supervision of them, and collect the rents as they might accrue. He gave no special power to Norris to grant leases, but told the parties, in the presence of Norris, upon the ground, that he, Norris, would have charge and control of the land.

Varnell spent two or three days while on this visit, at the residence of Norris, at Galena, and in the mines, during which, Norris proposed to purchase the lands for one thousand dollars, and in addition to that, he proposed to purchase jointly with Varnell, which Varnell declined on the ground he had no money, upon which, Norris proposed to advance the money, charging Varnell interest upon it until he could repay it. Varnell proposed then to investigate the matter, and after seeing Tayloe, at Washington City, the matter was then dropped. He afterwards received a letter from Norris, relating to the same subject.

What followed these preliminaries, is found in the letters in the record. The first is the letter from Varnell to Norris, dated Mt. Vernon, Feb. 12, 1866, in which Varnell asks Norris if he will attend to the taxes of 1865 on this land, and asks him how he progresses with the lead mines ; asks him what he will give for the land, and then says : " I think I can buy it at a reasonable rate for you, or any one that may want. Please let me hear from you as soon as possible."

Here was a plain proposition to Norris, by Varnell, to become Norris' agent to buy this land. Was this offer accepted by Norris ? On the 15th of February, Varnell writes to Norris for an offer for the whole tract, having before enclosed him Foltz's letter proposing to purchase the " forty." He says, Norris shall have the refusal, and wants him to be liberal, and offer at once every dollar he feels like giving for the whole tract, and trusts he can make a big strike and get thousands of dollars worth from it, and then asks, merely for his personal gratification, how much mineral has been taken from the land since the first digging commenced.

On the 14th of March, Norris answered this letter, and proposed to give two thousand dollars for the land and the accrued rents, which then amounted to more than eight hundred dollars, but which he represented at four or six hundred dollars, though no doubt innocently.

To this, on the 23d of March, Varnell responded by letter from Washington City, that the proposition is accepted. He asks Norris to send him the names of the parties, and the exact description of the land, and when he returns to this State, on the 10th of April, he will bring the deed with him, all right, duly executed, ready for delivery, and tells Norris he can go on as there will be no difficulty.

On the 3d of April, 1866, Varnell again writes Norris from Washington City, acknowledging receipt of a letter of March 27, from Norris, containing a description of the lands, and says he will send on the deed as directed in a few days—that

Mrs. Tayloe was sick, but would be all right in a day or so. He further says he has put the consideration at $1,500, being the amount at which Norris valued the land, and says he had authority to sell at $1,500, but "the amount I make I desire no one to know." He says he will be in Virginia until Saturday, when he will start the deed, which will be ready by that time; is glad Norris gets the land, and truly hopes he may do well with it. In a *nota bene* to this letter, he says: "I said nothing to Mr. T. (Tayloe) especially of the late strike. Don't think he would have sold if I did, but I really don't deem it of any great importance. We have spent a good deal on the land, and ought to make something out of it. Though he authorised me to sell at $1,500, if he knew I obtained $2,000 he might not feel kindly about it. I have had considerable trouble and loss of time with, and ought to make something out of it, and do not deem the transaction otherwise than as perfectly fair. I would be willing to give the price for the land myself, but I know he would not sell to me."

There is nothing appearing in the record to show that Varnell was the agent of Tayloe to bargain away this land, except Varnell's statement in the above letter, nor did he, as this correspondence shows, act as such, but as the agent of Norris to purchase the land for him, he, Varnell, having volunteered to be such agent, as is shown by his letter of February 12, 1866. He was not Tayloe's agent to sell, but had a supervisory control over the lands, as stated by him in his deposition. The same position was occupied by Norris. He had full charge of the land, and granted privileges in it, and to that extent was the agent of Tayloe. Norris well knew Varnell was not the agent to sell the land, but he made him his agent to purchase.

What, then, was Varnell's duty under the circumstances? Standing in a *quasi* confidential relation to Tayloe, and at the same time an agent of Norris to purchase valuable property which Tayloe had entrusted to him, it seems one of the plainest dictates of justice and honesty, that Varnell, when

negotiating with Tayloe to purchase the property, should have communicated to him all the knowledge he possessed, by the letters of Norris, of the supposed mineral wealth of the land, all of which he studiously withheld, believing, as he says, " it was a matter of no great importance."

At the time the letter of March 14, by Norris to Varnell was written, proposing to give $2,000 for the land, the survey, which determined most important interests, had not been made, but it was made by the county surveyor about the middle of March, or a few days after the letter of the 14th. That survey developed the fact that a rich lode, not before certainly known to be on that land, was in fact on it, greatly enhancing its value, and even when the letter was written, sufficient developments had been made to justify the belief that the tract contained rich diggings, as in the months of January up to the 23d of March, about 90,000 pounds of mineral, and up to April 1st, about 140,000 pounds were raised on it, so that it is very evident, the realities and the prospect together made the land immensely more valuable than the price offered and received, and these facts were known only to one of the contracting parties, Norris, and he acting and standing in a fiduciary relation to the owner, of whom, through Varnell, he purchased at a greatly inadequate price, which, on Varnell's own admission, Tayloe would not have accepted had he known the true state of the facts.

We cannot but think it was Norris' duty, before he permitted his offer of March 14 to go before Mr. Tayloe, to have communicated, fully, the result of the survey which was then in the process of execution, and which he could have done in his letter of March 27. By accepting the position of an agent to take charge of this land, collect the rents and royalty, and pay the taxes, a fiduciary relation was thus created in regard to whatever related to the land. Confidence was reposed that he would act in all things for the interests of his constituent. Good faith required he should have communicated these

important facts, developed by the survey, before he permitted his constituent to sell. But even that which was certainly known, that it was mineral land with flattering prospects, was not communicated by Varnell, his agent, to Tayloe, their common constituent.

As for the other appellant, Foltz, it is very evident he had full knowledge of what was going on. Substantially he was a party with Norris in purchasing. .

We fail to perceive any error in the record, and must affirm the decree.

*Decree affirmed.*