## JOHNSON v. HARDER AND AVERY.

1. **Evidence:** VENDOR AND VENDEE: VALUE OF PROPERTY. Where there is a conflict in the direct evidence respecting the terms of a sale, the value of the property sold may be shown as a corroborative circumstance.

2. ———: ———: CONVERSATIONS. Evidence of conversations between vendor and vendee in relation to the sale, which took place some time before and constituted no part thereof, is not admissible.

3. **Mortgage:** ATTORNEY'S FEES: LIABILITY OF PURCHASER. The purchaser of land subject to a mortgage, who undertakes to discharge the mortgage, becomes personally liable upon a covenant in the mortgage that a reasonable attorney's fee shall be paid if the mortgage is foreclosed.

*Appeal from Webster Circuit Court.*

FRIDAY, APRIL 20.

ACTION to foreclose a mortgage executed by the defendant Harder, and to recover a personal judgment for the amount thereof against the defendant Avery. The petition avers in substance that the mortgaged premises were sold by Harder to Avery, and that Avery, as a part of the consideration of the purchase, agreed to pay the mortgage debt. Avery

denies that he agreed to pay the mortgage debt, except upon the condition that Harder should perfect the title to a portion of the mortgaged land, which he failed to do. The facts are stated in the opinion. Decree of foreclosure and judgment against Avery for the mortgage debt. Avery appeals.

*Theodore Hawley*, for appellant.

*O'Connell & Springer*, for appellee.

ADAMS, J.—The mortgage was executed upon one hundred and eighty acres of land to secure a debt of $635. After the execution of the mortgage, the defendant Harder, the mortgagor, sold the premises and some personal property to the defendant Avery.

What the consideration was is the question in this case. The plaintiff introduced evidence tending to show that Avery was to pay for the property, personal and real, the sum of $500, and assume the mortgage debt. Avery introduced evidence tending to show that he was to pay the sum of $575, and that he assumed the mortgage debt only conditionally as above set forth. The fact was that of the one hundred and eighty acres the title to only twenty acres was perfect. To the remainder the title was in controversy between Harder and the Des Moines Valley Railway Company, under a certain grant from Congress. This was well known to the parties and spoken of at the time of the trade.

Several witnesses were introduced upon each side to show what the terms of the trade were, and their testimony is clear and positive. According to the plaintiff's evidence the trade was made at Fort Dodge, about the 16th day of August, 1872. According to Avery's evidence it was made about the 20th of August, in Avery's barn. It is certain that there was a conversation about it at both places. The plaintiff's witnesses heard the former conversation, and the defendant Avery's witnesses heard the latter. Two of Avery's witnesses state that they were called upon to witness the trade, that it was stated to them formally and assented to by the parties, and that the

assumption of the mortgage was made conditional upon the title to the one hundred and sixty acres being perfected.

The Circuit Court, however, was of the opinion that there was a preponderance of evidence showing that the trade had been made previous to that time, and that the payment of the mortgage debt was assumed by Avery unconditionally. The case is not triable *de novo*, and it is not our province to weigh the evidence and determine on which side the preponderance lies. It is claimed, however, by the appellant that the Circuit Court admitted improper evidence, and this question we are called upon to examine.

I. The plaintiff introduced evidence tending to show the value of the property, real and personal, sold by Harder to Avery. To this evidence Avery objected as immaterial. It has been seen that there was a great discrepancy in the terms of the trade as alleged by the respective parties, and strong evidence was introduced by each party in proof of their respective allegations. The question then is as to whether, under such circumstances, it is allowable for either party to show the value of the property as a corroborative circumstance?

1. EVIDENCE: vendor and vendee: value of property.

If the property to which there was an undisputed title was of greater value than the amount to be paid without the assumption of the mortgage, could such fact be shown, to render more credible the testimony of the plaintiff's witnesses? It is clear that it could not be shown as independent evidence, and to rebut direct evidence of the terms of the trade. But where, as in this case, there is a conflict in the direct evidence of the terms of the trade, we are of the opinion that it may be shown as a slight corroborative circumstance. Where the difference in the alleged terms of the trade is not great, the value of the property would be a fact entitled to only the slightest if any weight. Persons' judgments often differ exceedingly in regard to the value of property. Besides, many persons make foolish trades.

Evidence of the kind in question should be admitted with great caution, and limited to its strictly legitimate province. The danger is that it will be used to affect the sympathy of

the court or jury to secure the release of an improvident party from the trade actually made. On the other hand, where a case is to be determined upon the credibility of conflicting testimony, the circumstances which surround the case are naturally sought for, and considerable latitude of inquiry is oftentimes allowed. In the admission of the testimony in question, we are of the opinion that the Circuit Court did not err.

II. The plaintiff introduced evidence of conversations between Harder and Avery in relation to the trade, which

2. ——: ——: conversations took place some days previous to conversa-
tions. the time of the trade, and in which nothing was agreed to which constituted any part of the trade. Upon precisely what ground the evidence was admitted does not appear. We must presume that it was supposed that what was said at the previous talks was corroborative of the testimony as to the terms of the trade. But to our mind it could have no such effect. It would seem quite as probable that if the parties talked but did not trade, and afterward, on a different occasion, traded, the terms of the trade were different from those previously talked of. In admitting this evidence we think the Circuit Court erred, and, inasmuch as the evidence appeared to the court to be entitled to some weight, it is to be presumed that the court was somewhat influenced by it.

III. The notes in suit contained each an agreement in these words: "In case this note is sued, I agree to pay plain-
3. MORTGAGE: tiff's attorney's fees." Evidence was introduced
attorney's fee: showing that $130 was a reasonable attorney's
liability of
purchaser. fee in the case, and that amount was included in the judgment against Avery. In this it is claimed by him that the Circuit Court erred; but we think otherwise. The evidence upon the point is as follows: To prove the bargain made by Avery the plaintiff introduced Harder as a witness, who said: "The bargain was that he (Avery) should give me $500, and he was to take up the mortgage and pay for it all."

It is true the mortgage did not show that Harder was personally liable for an attorney's fee. It provided that in

case of default the mortgagee should have a right to fore-close and make the amount of the notes, "together with a reasonable fee for plaintiff's attorney out of the aforesaid real estate." Now if Avery had simply bought the land subject to the mortgage he would not have been personally liable for any part thereof. But the evidence tends to show that he went further, and agreed to discharge the mortgage. Had he done so before foreclosure no attorney's fee could have been collected. After a decree of foreclosure was obtained he was still obligated by his contract, if Harder's statement of it is correct, to pay off the mortgage; but to pay it then it was necessary to pay an attorney's fee. We are of the opinion, then, that there was evidence tending to show that he be-came personally liable for such fee, and that the court did not err in allowing it.

We discover no other error than that above pointed out in the admission of testimony. For that the case must be

REVERSED.