JOHN VAUPEL, Appellee, v. JOHN MULHALL, Appellant.

**Fraud:** MISREPRESENTATION IN SALE OF LAND: INSTRUCTIONS. Where the evidence for plaintiff in an action for false representation in the sale of land tended to show that the farm sold was of irregular shape and contained but about sixty acres of tillable land, with a much larger quantity rough and unfit for cultivation; that it surrounded on three sides tillable land of another; that defendant represented his land as containing two hundred and twenty acres of tillable land and pointed out that of the other as a part of his own, a charge that if defendant with intent to defraud pointed out the land of the other and represented it to be his own, and his farm with the other contained two

hundred and twenty acres of good farming land; or, if without pointing out the land of the other he falsely stated that his own farm contained that quantity of tillable land he could recover, did not present inconsistent theories, as the gist of the fraud charged consisted in the false statement as to the acreage of his own farming land, and the pointing out of the other land was not an essential element in plaintiff's case, although competent evidence of the fraud.

Same: EVIDENCE: VALUE OF PROPERTY TAKEN IN EXCHANGE: DAMAGES.
2   In an action for false representations in the sale of land, where the consideration therefor was in part an exchange of other property, and there was a conflict in the evidence as to whether the false representations were made, and the plaintiff pleaded and testified to the alleged consideration paid by him, the defendant was entitled to show the actual value of the property taken in exchange; and such evidence of consideration should be considered with that of plaintiff, not only on the question of whether defendant relied on the alleged representations, but as to whether they were in fact made; and this rule would not affect the amount of plaintiff's damages, as he could show the value of the land if it had been as represented and recover on that basis.

*Appeal from Woodbury District Court.—*Hon. J. F. OLIVER, Judge.

THURSDAY, NOVEMBER 19, 1908.

REHEARING DENIED SATURDAY, FEBRUARY 20, 1909.

ACTION for damages for false representations in the sale of land. Verdict for plaintiff for $13,000. Judgment on the verdict for $7,000, plaintiff remitting. Defendant appeals.—*Reversed* and *remanded* for a new trial.

*Milchrist & Scott,* for appellant.

*Robert Munger, J. W. Hallam* and *Stearns & Zipf,* for appellee.

EVANS, J.—At the time of the transactions involved

in this action, the plaintiff was a merchant of Freeport, Ill., and the defendant was a dealer in real estate at Sioux City, Iowa. The plaintiff was desirous of purchasing real estate, and of paying therefor, in part, with goods to be selected by him from the shelves of his store at Freeport. He called at the office of the defendant at Sioux City for the purpose of ascertaining what he had for sale. The defendant sent one Casselman with the plaintiff and his son to see the farm in question. This farm is known in the record as the "Fisher farm," and is located in Monona County, and was then occupied by Fisher with his family, although he had recently sold it to the defendant. This farm consisted of three hundred and thirty-four acres, and was somewhat irregular in shape. Its extreme length was about a mile and a half, lying east and west. Its greatest width one hundred and sixty rods, and its minimum width eighty rods. It lay somewhat in the form of an open monkey wrench. In the open mouth of the wrench was a smaller farm, known as the "Erskine farm," being surrounded on three sides, namely, the west, north and east, by the Fisher farm. Substantially all of the east half of the Fisher farm and the west end of the other half consisted in rough, hilly, broken ground, and unfit for cultivation. Between these extremes there lay about sixty or sixty-five acres of level bottom land, fit for cultivation. Joining this bottom land on the south, and divided from it by an east and west highway, lay the Erskine land, which was also bottom land, and fit for cultivation. To the west and to the east and to the northwest and to the northeast of this Erskine land lay the hilly, rough ground of the Fisher farm. The Fisher house was located upon the east and west highway, which separated the Erskine land from the bottom land on the Fisher farm. This house faced toward the south, and toward the Erskine land. The evidence on the part of the plaintiff tends to shows that on the day in question

Casselman represented to him that the Fisher farm contained two hundred and twenty acres of good bottom land, fit for cultivation, and that the balance consisted of hilly, untillable land. In order to reach the Fisher place, the parties drove over a private driveway running north through the Erskine farm and opening into the highway near the Fisher house. While passing through the Erskine farm, Casselman, pointing his hand over the Erskine farm, said, in substance, "This is the land." The parties drove to the Fisher house. More or less of an inspection was had by the plaintiff, to the extent, at least, that he looked over the ground, which he supposed to be the two hundred and twenty acres of good bottom land. He did not pass over the whole farm, nor leave the Fisher house for any considerable distance; nor did he ascertain the boundaries of the land. He believed, however, that the Erskine land to the south of the highway was part of the farm, and believed the statement of Casselman that there were two hundred and twenty acres of good bottom land, and, so relying, he purchased the farm at a consideration, expressed in the contract, of $65 per acre, and paid for the same. After the purchase of the farm he discovered that it contained not more than sixty or sixty-five acres of good bottom land, and that the farm as a whole was worth not more than about $30 or $32 an acre. His evidence tends to show, also, that it would have been worth $65 per acre if it had contained two hundred and twenty acres of good bottom land as represented. The evidence on defendant's part tends to show as follows: That no representations of any kind were made; that the Erskine farm was not pointed out as any part of the Fisher farm; that the farm would not have been worth $65 an acre if it had contained two hundred and twenty acres of bottom land; that the plaintiff did not pay $65 an acre therefor; that although the contract expressed the consideration at $65 per acre, it was also a part of the contract that it was

to be performed, in large part, by an exchange of goods, to be selected by the plaintiff himself from the shelves of his store; that he paid for said farm only $10,000 in money, and $11,710 figured at the original invoice· value of shelf-worn goods, which were worth, in fact, not more than ten or fifteen cents on the dollar. The evidence on defendant's part also tends to show that the farm, in the condition it actually was, was worth all the value which plaintiff paid for it. Plaintiff's evidence·in rebuttal tended to show that the goods turned out by him in partial payment for the farm were worth from eighty to eighty-five cents on the dollar.

I.   The court charged the jury, in substance, in instruction No. 6 that, if Casselman, with the intention to deceive and defraud the plaintiff, pointed out to him the Erskine land, and represented it as being a part of the Fisher farm, and that the Fisher farm, as so pointed out and shown to plaintiff, contained at least two hundred and twenty acres of good farm land, or if, without pointing out the Erskine land, the said Casselman falsely and fraudulently represented to the plaintiff that the Fisher farm contained two hundred and twenty acres of good farming land, located upon the bottom, and excellent for cultivation and the raising of crops, and that such representations were false, and known by Casselman to be false, and the falsity of such representations was not known by plaintiff, but that he believed and relied upon such representations, and, so believing and relying, purchased the farm in question, then he was entitled to recover. The appellant contends earnestly that this instruction submits the case to the jury on two inconsistent theories, and that, if the plaintiff relied upon one representation, he could not have relied upon the other. It is urged that, if the plaintiff has failed to prove that Casselman pointed out to him the Erskine land as part of the Fisher farm, his case must

*1. FRAUD: misrepresentations in the sale of land: instructions.*

fail, because he has testified that he relied upon that representation. The argument is not sound. Suppose it had been found as a fact in the case that Casselman had not represented the Erskine land to be a part of the Fisher farm, but that he had represented the Fisher farm to contain two hundred and twenty acres of good bottom land. The plaintiff was upon the ground. He looked about him to see the general character of the bottom land. The Erskine land was close at hand and in plain view. If he looked for approximately two hundred and twenty acres of bottom land, his eyes must have rested upon the Erskine land as a part of it, for there was no other bottom land in sight sufficient to make approximately the number of acres represented to him. If, therefore, by any false representation, knowingly made by Casselman, the plaintiff was induced to believe that the Erskine land was a part of the Fisher farm, then he would not be precluded from relying upon such belief, simply upon failure to prove that the Erskine land was expressly pointed out to him as a part of the farm. The essence and material part of plaintiff's case is that Casselman falsely and knowingly represented the Fisher farm to contain two hundred and twenty acres of good bottom land, fit for cultivation. If that charge is proved by whatever proper evidence, plaintiff's case is made in that respect.

Plaintiff testified that Casselman expressly pointed out to him the Erskine farm, and it was proper evidence tending to prove the essential charge. If he failed to satisfy the jury that express representations were made as to the Erskine land, the jury might still find that he saw the Erskine land, and believed it to be a part of the Fisher farm, because of Casselman's representations that there were two hundred and twenty acres of such bottom land included in the farm. And such belief on his part would warrant the jury in finding that he relied upon Casselman's representations as to the two hundred and

twenty acres.  If, after hearing such representations from
Casselman, it was plainly obvious to him that the farm
did not contain two hundred and twenty acres of bottom
land, or approximately so many acres, then he would
not be justified in believing or relying upon such false
representations.  On the other hand, if he saw two hundred
and twenty acres of bottom land in plain view, the jury
could justify him in believing that sufficient of such bot-
tom land was included in the farm to make Casselman's
representation good.  We are of the opinion, therefore,
that there was no inconsistency in the instruction com-
plained of, nor in the two theories submitted to the jury
therein.

II.    The plaintiff alleged in his petition that, by rea-
son of such false representations, he was induced to pay
for said land at the rate of $65 per acre, being the total
sum of $21,710.  This allegation was put in
issue by defendant's general denial.  Plain-
tiff testified that such was the price he paid.
The evidence is undisputed, however, that
the contract between the parties was one of
partial exchange of properties, and that the contract be-
tween them was represented by two contemporaneous in-
struments.    The plaintiff was to select from the shelves
of his own store goods, to be computed at the original
invoice prices, · up to the amount of $11,710, and to de-
liver the same in partial exchange for the farm, and to
pay in money the difference of $10,000, and thus was the
contract executed.    Defendant offered evidence tending
to prove the alleged actual value of the goods so delivered,
and tending to prove that they were worth not to exceed
from 5 to 15 percent of the invoice prices, at which they
were figured for the purpose of trading.    Some evidence
of this kind was at first rejected by the trial court, but
other similar evidence was afterward received for a limit-

2. SAME: evi-
dence: value
of property
taken in ex-
change:
damages.

ed purpose.    This limited purpose was set forth to the jury
in Instruction.No. 5, which is as follows:

Par. 5.    Testimony has been admitted upon the trial
to the effect that the value agreed upon between the par-
ties as the price or value at which the plaintiff's goods
were to be taken in the exchange was far in excess of the
reasonable market value thereof, and you are instructed
that such fact, if proven, is proper to be considered by
you, with all the other evidence, in determining whether
the plaintiff was induced to. make the trade in question
by the false and fraudulent representations, if, any, of
said Casselman, and for this purpose only.   The mere fact,
if proven, that said goods were only worth a small frac-
tion of the value placed upon them by the parties in the
trade will not be sufficient to defeat a recovery, or even
operate to reduce the amount thereof, unless you find
that that fact, and not the false and fraudulent representa-
tions complained of, if any such were made by said Cas-
selman, was the main and material inducement which
caused the plaintiff to make the trade.   In other words the
plaintiff had a right to trade his goods to the best possible
advantage.   He is not charged with any fraud in the trans-
action, and therefore, if he made an advantageous bar-
gain, he is entitled to the full benefit thereof; and the
mere fact, if it be a fact, that in case he recovers in this
action he will be receiving much more for his goods than
they were fairly and reasonably worth, will not be suffi-
cient to defeat such a recovery, or lessen the amount there-
of, if the facts necessary to entitle him to. so recover have
been proven and established, as stated and explained in
this charge.    But if, from all the evidence before you,
including this fact, if proven, you believe that the false
and fraudulent representations, if any, made by the said
Casselman were not the material inducements relied upon
by the plaintiff in making the deal in question, as ex-
plained in this charge, then he can not recover anything
in this action, and your verdict will be for the defendant.

The defendant complains of this instruction.    It was
settled by this court in an early day that, in an action
for false representations in the sale of land, where part

of the consideration was an exchange of property, the de-
fendant was entitled to show the actual value of the prop-
erty received by him, and that such evidence was admis-
sible, not only for the purpose of showing that plaintiff
did not rely upon the alleged representations, but also as
a circumstance to be considered by the jury in determin-
ing whether the fraudulent representations were made.
*Likes v. Baer,* 10 Iowa, 89. In *High v. Kistner,* 44 Iowa,
79, this rule was reaffirmed. It is said in the opinion:
"The testimony was competent, not for the purpose of fix-
ing the measure of damages, but to throw light upon the
conduct of the parties and test the truth of the testimony."
In the case first cited the substance of the argument of
Justice Wright's opinion is that, if the value of the prop-
erty received by the defendant was not substantially
greater than the value of the property sold by him, it tend-
ed to show an absence of motive, which "would render it
improbable that defendant made the representations charg-
ed or claimed as to the quality of the land, for it is not
likely that he would thus overestimate its advantages in
order to get a tract worth no more than his own." Tak-
ing the case at bar, the plaintiff averred in his petition,
and testified as a witness, that he paid $65 an acre for
this land, whereas in its actual condition it was worth not
to exceed $32 per acre. If this testimony should be taken
as true by the jury, then so great a variance between the
price paid and the actual value of the property was an
important circumstance, tending to corroborate the plain-
tiff's claim that he was in some manner deceived. If
the defendant could prove that the difference between the
value of the property received by the plaintiff and that
which he parted with was much less than claimed by him,
it tended to reduce the force of the circumstance above
referred to. And if he could prove that there was no
difference in value then the force of such circumstance

would be quite destroyed. See, also, *Johnson v. Harder,* 45 Iowa, 677, for a case bearing some analogy.

In this fifth instruction the court charged the jury that the plaintiff was entitled to the benefit of his contract, and that therefore the evidence referred to should be considered only for the limited purpose therein stated. This was an assumption that the evidence in question, unless limited in its purpose as therein stated, tended to deprive the plaintiff of the benefit of the invoice prices bargained for by him for his merchandise. But it must be noted that we are dealing here with a rule of evidence, and not with a rule of measure of damages. There is nothing in this rule of evidence which deprives the plaintiff of any benefit of his contract. The benefit of his contract is secured to the plaintiff by the rule of measure of damage. The rule of measure of damage applicable in such a case fully protects the plaintiff in this respect. It has been framed by the courts with that very end in view. Plaintiff may prove, if he can, that the property purchased by him, if as represented, would have been worth even more than the agreed purchase price, and he may prove such enlarged value by the testimony of witnesses, regardless of the price paid. The rule that defendant should be permitted to rebut the evidence of plaintiff as to the true consideration paid in no sense militates against plaintiff's right to show the real value of the property as it would have been if as represented, and to claim the benefit of his contract in this manner. The idea that the plaintiff may have the benefit of this rule of measure of damage, and in addition to that may have some further supposed benefit from the sale of his goods at invoice prices, is not tenable. This idea is a first impression which often obtains in the mind of bench and bar. But its fallacy can readily be made to appear by putting side by side the two following hypothetical statements: (1) Suppose the land be as good as represented. Plaintiff is

then whole. If whole, he has the full benefit of his contract, including the invoice prices bargained for. And this is so even though the value of the land be less or more than $65 per acre. (2) Suppose the land be not as good as represented, and that it be worth $7,000 less than it would have been if as represented. The plaintiff then lacks $7,000 of being whole. The rule of measure of damage requires the defendant to pay him that sum. That being done, the plaintiff is whole again, as whole as in the first position stated. If whole, we repeat, he has the full benefit of his contract, including the invoice prices bargained for. And this is so even though the value of the land, plus $7,000, be less or more than $65 per acre.

Plaintiff is party to only one contract, although it be represented by two contemporaneous instruments; is entitled to one damage, indivisible; and to only one rule for the measure of it. So that the rule of measure of damage is quite adequate to protect the plaintiff in the full benefit of his contract, and the rule of evidence under consideration is in no sense inconsistent with it, nor with plaintiff's full rights in that respect. It follows, therefore, that in this action for damages for false representations in the sale of property, where the consideration was in part an exchange of other property, and where the direct evidence is in conflict as to whether false representations were made, and where the plaintiff has pleaded and put in evidence the alleged consideration paid by him, the defendant is entitled to rebut such evidence by showing the actual value of the property consideration exchanged by plaintiff, and such evidence of consideration, on behalf of defendant, should have been permitted to run with the evidence of consideration on the part of the plaintiff, to be considered by the jury in connection therewith and for the same purposes. And it may be added generally that either party is entitled to show the value of the property

consideration paid or received by him as a circumstance bearing upon the probability, not only whether false representations were relied upon, but also whether the false representations were made. Under this rule the fifth instruction placed too narrow a limitation upon the purpose for which such evidence might be considered.

III. Referring again to the case of *Likes v. Baer*, cited above, it may perhaps be proper to say that, as it was first decided and reported in 8 Iowa, 368, the opinion of the court was adverse to this rule of evidence. A rehearing being granted, the court reconsidered its former opinion on that question, and laid down the rule which we are now following. The second opinion is reported in 10 Iowa, 89. The rule laid down in the second opinion has been followed in other jurisdictions. See *Aldrich v. Scribner*, 146 Mich. 609 (109 N. W. 1122). The case has not often been cited in our own subsequent reports on that question, nor has the case of *High v. Kistner*. Neither of these cases found a place in the careful briefs of counsel in this case, and the question has been submitted to us without any other Iowa citation directly in point. We have therefore discussed the question more elaborately than we might otherwise have deemed useful. A reference should be made here to the case of *Hibbets v. Threlkeld*, 137 Iowa, 164. This question was there considered from the reverse side; that is to say, the plaintiff was the appellant, and complained of an instruction similar in its effect to the fifth instruction in the case at bar. Plaintiff took the ground in that case that the evidence in question was not admissible for any purpose. The point was overruled by this court, and the instruction sustained. But the right of the defendant to complain of the instruction as too narrow was neither involved nor considered in that case. Because of the error in the fifth instruction this case must be reversed and remanded for a new trial.

Other alleged errors are argued, but the questions involved are of such a nature that they are not likely to arise on another trial.—*Reversed* and *remanded.*