STEPHEN E. AUKER, APPELLEE, V. EDWARD PERRY ET AL.,
APPELLEES: RICHARD RITZE ET AL., APPELLANTS.

FILED JULY 1, 1927. No. 24978,

1. Mortgages: ASSUMPTION BY PURCHASER. Where a purchaser
of land, in consideration thereof, assumes a mortgage thereon,
which mortgage has been previously recorded, he is chargeable
with notice, and becomes obligated thereby to pay the debt
in accordance with the terms and conditions of such mortgage,
and the note and coupons by it secured, including an acceler-
ation clause in each or either thereof.

2. ———: ———. In such case the note, coupons, and the
mortgage securing the same should be considered together, as
they, thus combined, constitute the obligation assumed.

3. Evidence examined, and found that appellants' charge of fraud
is not sustained, and that their answer and cross-petition is
without equity.

4. Cases Held Inapplicable. *Miller v. Ruzicka*, 111 Neb. 815, and
other cases cited by appellants, considered and held inapplicable.

APPEAL from the district court for Wayne county: AN-
SON A. WELCH, JUDGE. *Affirmed.*

*Fay H. Pollock* and *North & O'Reilly*, for appellants.

*C. H. Hendrickson* and *A. R. Davis, contra.*

Heard before ROSE, DEAN, DAY, GOOD, and THOMPSON,
JJ.

THOMPSON, J.

In this action Stephen E. Auker, appellee, hereinafter
called plaintiff, by way of a petition in usual form, sought
to foreclose a mortgage on certain lands in Wayne county.
The mortgagors, Edward Perry and Edward J. Auker, ap-
pellees herein, were made defendants, as were Richard Ritze
and Carl L. Ritze, appellants herein, and hereinafter re-
ferred to as the Ritzes, vendees of such mortgagors; such
Ritzes in the contract of purchase, as well as in the deed
of conveyance to them, having assumed and agreed to pay
the mortgage. After the issues were duly joined, trial was
had, and decree rendered finding the amount due plaintiff

to be $50,000 on the principal note with interest thereon at 5 per cent. from March 19, 1925, and on the interest coupon due March 19, 1925, the sum of $2,500 with interest thereon at 10 per cent. from its due date, and ordering foreclosure and sale as prayed by plaintiff, and as prayed by the original mortgagors in their cross-petition, and holding the Ritzes primarily, and Perry and Auker secondarily, liable for any deficiency remaining after sale and application of proceeds. To reverse this judgment the Ritzes appeal, alleging as grounds for reversal, among others, fraud which they claim entered into the original written contract of sale from Perry and Auker to them of the land in question, which fraud, as alleged in their answer, in substance, consisted of the following alleged facts: That it was represented to them by Perry and Auker that the land referred to was mortgaged in the sum of $50,000 to secure a principal debt of that amount, bearing interest at 5 per cent, per annum from March 19, 1920, the date thereof, to March 19, 1930, at which time such note and mortgage matured; that the land had been purchased by defendants Perry and Auker from plaintiff for the sum of $80,000, and they had paid plaintiff therefor by executing and delivering to him such mortgage, and paying the balance in cash, when in fact they had not paid $80,000 for the land nor agreed to pay such amount, but had paid $74,000 therefor and no more; that such fraud consisted further in the intentional concealment from them at the time by Perry and Auker that such note and mortgage contained therein the acceleration clauses hereinafter set forth; that they entered into such written contract relying upon and believing that neither the note nor the mortgage contained acceleration clauses, and that Perry and Auker had paid $80,000 for the land; that they did not discover such fraud until the bringing of this action; and that, by reason thereof, the court erred in finding them liable for a deficiency judgment, and also erred in not canceling such contract and deed, and entering judgment in their favor against Perry and Auker for payments theretofore made by them on such purchase,

together with the value of such permanent improvements as they had in the meantime placed thereon, as prayed in their answer and cross-petition.

Upon examination of the record we conclude as follows: That the plaintiff was the owner of the lands in question; that he had sold the same to one Clark for $78,000, and Clark had paid thereon in cash $4,000, but upon his failure to comply with such contract, the same was canceled, and the land was purchased by Perry and Auker for $74,000, they thus receiving the benefit of the $4,000 payment by Clark; that Perry and Auker paid plaintiff $24,000 in cash, and gave him back a mortgage on the land for $50,000, such mortgage and the note it secured being the ones here in question; that the mortgage was duly recorded in the office of the county clerk of Wayne county; that at the time of entering into the contract the Ritzes were told of such sale of the land to Clark, and the cancelation of Clark's contract of purchase, the purchase by Perry and Auker, and their payment therefor as above indicated; that the Ritzes entered into possession of the land under this contract and made some valuable improvements thereon of a permanent nature; that in February, 1921, Perry and Auker furnished the Ritzes with an abstract of title to the land which showed the only mortgage on the tract was one for $50,000, together with the book and page where and when recorded, which abstract was examined by their attorney and returned with certain objections thereto, but without objection of any kind to such mortgage or note; that, on refusal of the Ritzes to comply with the contract of purchase, an action for specific performance was instituted against them by Perry and Auker, trial had, and a decree of performance on the part of the Ritzes was entered; that in such case the Ritzes did not specifically interpose the defense of fraud; that to reverse such judgment, appeal was had to this court, and the decree of the trial court was affirmed, which case is reported in *Perry v. Ritze*, 110 Neb. 286; that on entry of the mandate in the trial court on June 28, 1923, the balance of the purchase price was paid

by the Ritzes save the $50,000 mortgage, the receiver who had been appointed and acted during the interim was by mutual consent of the parties discharged, the balance of the money, net income received by such receiver, turned over to the Ritzes, as was also the deed and the possession of the land, which they have ever since retained, and do now; that the Ritzes paid the interest coupon which became due March 19, 1924, but failed to pay that which became due March 19, 1925, and the plaintiff elected to declare the whole amount due and payable, and instituted this suit; that the interest coupons due in 1922 and 1923 were paid partly by the receiver and partly by the Ritzes; that each and all of such coupons showed on its face that it drew interest after due at 10 per cent. per annum; that the note of $50,-000 and the interest coupons were payable by their terms at the Citizens National Bank of Wayne, and for that purpose were by the plaintiff placed in the custody of such bank, as was well known by the Ritzes, and could have been inspected by them if desired, especially at the time of any interest payment.

Thus we conclude that in the conversation leading up to this contract, and the signing and execution thereof, there were no fraudulent statements made by Perry and Auker as to the matters in controversy herein; if fraud there was, it was solely by reason of the fact that no mention was made by Perry and Auker at the time of the acceleration clauses in such note and mortgage, except as indicated by the written contract in question.

Our consideration is thus directed to the contract, as evidenced by these different instruments. The provisions of the sale and purchase agreement, so far as material, are as follows: "The party of the second part (the Ritzes) agrees to pay the sum of eighty thousand dollars ($80,000) payable as follows:  Cash in hand eleven thousand ($11,000) dollars, receipt whereof is hereby acknowledged. Balance $50,000 by assuming a mortgage of that amount with interest thereon from March 1, 1921, this mortgage being due March 1, 1930, and optional. $14,000 on March 1, 1921,

without interest. $5,000 on or before March 1, 1923, with interest at the rate of 5 per cent. per annum, interest to date from March 1, 1921, to be secured by a second mortgage on the above described property. The party of the second part further agrees to pay the taxes on said mortgage and the debt secured thereby, and to carry $————— insurance on said property, payable in case of loss to said first party. The party of the first part is to furnish to the party of the second part, or assigns, a warranty deed and a good and merchantable abstract of title, on or before March 1, 1921, assign all insurance on said buildings and pay interest at the rate of 4 per cent. on the $11,000 cash payment from April 7, 1920, to date, and also to pay interest at the rate of 5 per cent. on $5,000 of the cash payment from this date to March 1, 1921. On the $14,000 payment due March 1, 1921, parties of the first part agree to accept up to $3,000 in Liberty bonds, said bonds to be taken in at market value plus one-half the difference between market value and face value, pay all taxes assessed against said land, and if there is a mortgage on said property pay interest thereon up to March 1, 1921, and give possession by March 1, 1921."

The acceleration clause in the note is as follows: "Should any of said principal or interest not be paid when due, it shall bear interest at the rate of ten per cent. per annum from the time same becomes due until paid, and upon any failure to pay any of said interest within five days after due, the holder may elect to consider the whole note due and it may be collected at once."

The acceleration clause in the mortgage provides: "That a failure to pay any of said money, either principal or interest, when the same becomes due or a failure to comply with any of the foregoing agreements shall cause the whole sum of money herein secured to become due and collectable at once at the option of the mortgagee."

The provisions contained in the deed executed and delivered to the Ritzes by Perry and Auker in pursuance of the aforementioned contract, material for our considera-

Auker v. Perry.

tion, are as follows: "In consideration of the sum of
eighty thousand and no/100 dollars, in hand paid, do here-
by * * * convey * * * And we do herewith covenant
with the said Richard Ritze and Carl Ritze, and their heirs
and assigns, that we are lawfully seised of said premises,
that they are free from incumbrance except for one mort-
gage of $50,000 which grantees assume and agree to pay
with interest thereon at the rate of five per cent. from
March 1, 1921."

Thus we approach the question of the legal effect of the
contract entered into. We held in *Crawford v. Houser,*
*ante,* p. 62: "A stipulation in a mortgage, authorizing the
mortgagee to accelerate the maturity of the mortgage debt,
if interest thereon is not paid when due, or if the taxes on
the mortgaged premises are not paid at or before the time
they became delinquent, is not forbidden by the statute,
nor contrary to public policy, and may be enforced."

In *Moorehead v. Hungerford,* 110 Neb. 315, we said:
"The coupon bonds, or principal notes, which are secured
by the mortgage, provide that, 'upon any failure to pay
any of said interest within five days after due, the holder
may elect to consider the whole debt due and it may be col-
lected at once.' The notes and the mortgage, taken to-
gether, constitute a valid and enforceable contract. De-
fendants as purchasers having assumed and agreed to pay
the mortgage indebtedness as a part of the purchase price
were bound by the terms of the instruments which consti-
tute the contract. The mortgage having been recorded, de-
fendants were chargeable with notice of its provisions."

It is elementary that "A party whose cause of action is
founded upon a written contract is limited as to his rights
by the terms of such contract, and a recovery contrary
thereto cannot be sustained." *Patterson v. Murphy,* 41
Neb. 818.

As we have seen, in this case such contract is that of pur-
chase which the parties reduced to writing and signed, the
note, the coupons, and the mortgage securing the same, and
the clause in the deed whereby the Ritzes assumed and

agreed to pay. There was but one $50,000 mortgage involved, and that was the one belonging to the plaintiff, as each well knew. It was recorded, hence the Ritzes were chargeable with notice of its provisions, which covered those of the note and coupons as well. The contract of purchase in no manner limits or describes such mortgage as to its provisions, except to frankly inform the Ritzes that it is "optional," and the record is without complaint as to this provision. After being informed of this optional nature of the mortgage contract, and that over their own signatures, they cannot be heard to say, under this record, that they did not know; and further such knowledge under our holding involved the note and coupons as well.

"The acceptance by the grantee of a deed poll containing a covenant that the land conveyed is free from incumbrances except a mortgage previously made by the grantor, 'which the grantee assumes and agrees to hold the grantor harmless from,' constitutes a contract by the grantee, not merely to indemnify the grantor, but to pay the mortgage debt" (and that according to the contract's legal terms). *Locke v. Homer,* 131 Mass. 93.

As succinctly stated in the course of the opinion in *Baldwin v. Munger,* 200 Ia. 32: "A mortgage imports a pecuniary obligation, and the assumption of a mortgage debt is clearly pecuniary. If a note secured by the mortgage gives the mortgagee the right to 'reasonable attorney's fees,' it is obligatory upon the promisor to pay same. This is a pecuniary obligation, and is within the indebtedness contemplated by an assumption contract of the purchaser of the land. It becomes a part of the mortgage debt assumed by the grantee. *Johnson v. Harder,* 45 Ia. 677. The assumption of a mortgage according to its terms includes a covenant to maintain insurance for the benefit of the mortgagee. This also is pecuniary in character. *Johnson v. Northern Minnesota Land & Investment Co.,* 168 Ia. 340. A stipulation in a note for the acceleration of the due date of the mortgage is binding upon a person who assumes and agrees to pay the mortgage, on the theory that the agreement to

pay the mortgage is an agreement to pay the debt secured by the mortgage according to the covenants of a pecuniary character. *Williams v. Moody,* 95 Ga. 8."

Our holding in *Miller v. Ruzicka,* 111 Neb. 815, is cited by the Ritzes as being in conflict with the views herein expressed. As we conclude, the facts in that case, as well as in the other cases by them cited, are so dissimilar to the facts herein as to render the law announced in each thereof inapplicable to the facts disclosed by this record.

Hence, it is concluded that as the transaction under consideration was without fraud on the part of Perry and Auker, and as the record fails to show a cross-appeal on the part of the plaintiff as to the trial court's allowance of 5 per cent. interest instead of 10 per cent. on the $50,000 debt after the same was declared due and payable, the decree entered by the trial court is a correct application of the law to the facts; and as the transaction is without fraud, and the cross-petition of the Ritzes is without equity, it is unnecessary to consider other alleged errors presented.

AFFIRMED.