W. F. ROSS and ELMA ROSS, Appellees, v. CARL BOLTE and EMIL ZENFT, Appellants.

**Fraud in the purchase of land:** NEGLIGENCE: INSTRUCTIONS. One about to purchase real property who looks it over manifestly with·a view of ascertaining its value and desirability, is held to the exercise of ordinary care in so doing; and if he fails to exercise that degree of care under all the crcumstances he cannot be heard to complain of his bargain. The instruction in the instant case in effect relieving plaintiff of responsibility for his negligence unless grossly careless was erroneous.

**Same:** MEASURE OF DAMAGES. The measure of damages for the fraudulent representation of the value of land, when amounting to fraud, is the difference between the fair market value of the same as it was in fact, and its value if in all respects as represented. The instruction involved announced the correct rule.

**Same:** FRAUD: CONSPIRACY: INSTRUCTIONS. Where conspiracy is charged in connection with an alleged fraud for the purpose of fixing responsibility upon all the defendants, and the court properly submitted this question, further differentiation in the instructions between actions of fraud and conspiracy was not necessary.

**Same:** REPRESENTATIONS OF VALUE. Representations regarding the value of property, which are generally expressions of opinion do not as a rule constitute fraud, but they may be made under such circumstances as to amount to fraud.

*Appeal from Bremer District Court.*—HON. J. F. CLYDE, Judge.

TUESDAY, MARCH 24, 1914.

ACTION to recover damages for a conspiracy between defendants to defraud plaintiffs out of their farm. It is alleged that in negotiations leading to an exchange of farms defendants were guilty of fraud and misrepresentations

regarding the land which plaintiff was to and did receive, resulting in damage to him in the sum of $3,160. Defendants denied the conspiracy and fraud charged, and pleaded some further defenses which will be noticed in the body of the opinion. The case was tried to a jury, resulting in a verdict and judgment for plaintiffs in the sum of $1,828.60, and defendants appeal. *Reversed.*

*Sager & Sweet,* and *W. B. Ingersoll,* for appellants.

*Loren Risk,* for appellees.

DEEMER, J. Defendant Zenft was employed by plaintiff Ross to sell one hundred and twenty acres of land in Bremer county, and about December 20, 1909, he (Zenft) sent word to plaintiff to come to Oelwein, in Fayette county. Pursuant to this request he went to Oelwein and there met Zenft and his co-defendant Bolte. Zenft told plaintiff that Bolte had some lots and buildings at the town of Readlyn, which he desired to exchange for plaintiff's land. Ross had fixed the price on his land at $65 per acre, or $7,800 in all, and, as there was a mortgage of $5,000, his equity in the land was considered worth $2,800. Bolte, for the purposes of trade, fixed the value of his property at $5,000. Plaintiff and his wife went with defendants to see the Readlyn property, and went over the same, through the house and buildings thereon, and then went to the Savings Bank in the town, and the cashier drew up a written contract of exchange between Ross and Bolte, which was signed on that day.

By the terms of the agreement the exchange was to be consummated on January 1, 1910, and each party was to furnish the other with an abstract showing good and merchantable titles. As the Readlyn property was valued at $5,000, plaintiffs were to execute a note to Bolte for the sum of $2,200, which was to be secured by mortgage upon the Readlyn property. The deal was closed according to con-

tract, and plaintiffs took possession of the Readlyn property, and received the rents and profits thereof for a time.

Plaintiff charges that defendants conspired and confederated together to cheat him out of his farm, and that pursuant thereto they, or one of them, falsely and fraudulently represented that:

The defendant Bolte's said property was worth the sum of $5,000, well knowing that plaintiffs were not posted on values of town property; that it would rent for the sum of $25 per month; that they had a man ready and willing to rent said house for $25 per month; that one Schraeder, a section boss, had offered said Bolte the sum of $25 per month rental for said property, and that he stood ready and willing to move in said property at once, and would pay said sum of $25 per month; that the said defendants; and each of them, with intent to defraud the plaintiffs as aforesaid, figured before the plaintiff the amount of money he would receive as rental for the Bolte property at said $25 per month, and also figured before the plaintiff the amount of rent he would receive for his farm, and by such figures they showed the plaintiff that he would receive much more from the rent of the Bolte property than he would receive from his farm, and by such fraudulent and improper methods they, and each of them, convinced the plaintiff that he could receive said rental of $25 per month, and said Schraeder was ready and willing to enter said premises and pay said rental at once, and thereby induced the plaintiff to exchange his valuable property for said Bolte property, under the conditions as will be explained hereinafter.

They also alleged that the property was not worth to exceed $1,900, and that the rental value did not exceed $12 per month. They also charged that Zenft, their agent, was also the agent of Bolte, and so took advantage of his position as to mislead and defraud them, receiving, without their knowledge and consent, commissions from both parties; the fact of such double agency being known to Bolte. They alleged that they paid $60 to Zenft, as commissions, in the presence and with the knowledge of Bolte.

Defendants denied any conspiracy or fraud, pleaded that the Readlyn property was reasonably worth more than $2,200 more than plaintiff's property. They also pleaded:

Defendant Bolte further alleges that the plaintiffs, before contracting and closing negotiations for the exchange and acquisition of said Readlyn property, went upon said property and personally inspected and looked over said lots and the building situated thereon as to the character and value of said premises, and, in buying and acquiring said property, wholly relied upon their judgment as to the value and actual rental value of said premises.

Defendant Bolte further alleges that the plaintiffs, by inspection and investigation of the premises in question, had the means of acquiring knowledge of the rental value and market value of said premises; that said means of knowledge were fully open to said plaintiffs, and if the said plaintiffs failed to exercise said means of knowledge open to them as aforesaid, they were grossly careless and negligent, and are now barred and estopped from claiming that they relied upon representations made by the defendant Bolte as to the rental value and value of said premises.

Defendant Bolte further alleges that said plaintiffs took possession of said premises in Readlyn, Iowa, immediately after the consummation of said exchange, and exercised control and dominion of said property, and still continue to control the same; that said plaintiffs defaulted in the payment of the interest upon the mortgage given defendant Bolte on said property, and an action to foreclose said mortgage in the district court of Bremer county, and that said plaintiffs interposed no defense to said action, and permitted judgment to be entered by default; and that said plaintiffs, in allowing judgment to be entered by default, and by their failure to interpose a defense thereto, are now barred and estopped from claiming damages on account of relying upon alleged representations made by the defendant Bolte as to the rental value or value of said premises.

They also averred that plaintiffs' property was not worth to exceed $40 per acre. Plaintiffs replied to this answer, and, among other things, said:

Plaintiffs deny that they had knowledge or knew the value of the real estate to be conveyed by the said Bolte to them, and they state that M. F. Ross, before entering into the transaction, informed the defendant Bolte that he was not familiar with the value of town property, and requested the defendant Bolte to inform him as to whether said property was worth $5,000; that the defendant Bolte well knew that the plaintiff was not familiar with the value of town property; and that he relied wholly upon the representations of the defendant Bolte as to the value of said property wrongfully and fraudulently, and, with the intent to defraud the plaintiff, misrepresented to the plaintiff that said Readlyn property was worth the sum of $5,000.

Plaintiffs deny that they are estopped from recovering in this action upon the ground that they were in default in the action to foreclose the mortgage on said Readlyn property brought at a former term of this court.

Plaintiffs state that their appearance in said action was withdrawn without prejudice to the action at law against the defendant' for damages, and plaintiffs have elected to rely upon their action at law to recover damages for fraud, etc.

On these issues the case was tried upon conflicting and contradictory testimony, resulting in the verdict and judgment hitherto stated. Many points are relied upon for a reversal, and, to such as are deemed material, we shall now direct our attention.

I. The trial court gave the following among other instructions:

You will observe, gentlemen, that the matters of fraud claimed by the plaintiffs were three, and are in substance as follows: (1) That the Readlyn property was of the reasonable value of $5,000 at the time of the negotiations; (2) that Bolte had been offered $25 a month rent for the property in question, and.that Schraeder was ready and willing to lease the same at $25 a month; and (3) that the defendants figured over the rents of the two properties, and from such figuring stated to and convinced the plaintiffs that they would obtain more rental from the Readlyn property than they were getting from the farm.

(6) If the plaintiffs recover in this case, it must be because they have established one or more of the matters stated in the last instruction; that the statements and conduct claimed to be fraudulent were false in fact; that defendants then knew them to be false, and that they were made by the defendants for the purpose of inducing the plaintiffs to make the exchange of properties which was in fact made; that the plaintiff Ross believed the false statements to be true; and that he was induced thereby to close the deal. If all the matters stated herein are established by the evidence, the plaintiffs' claim of fraud is established. If any one or more of the matters stated herein have not been established by the evidence the claim of fraud is not established, and the plaintiffs' case must fail.

(7) Ordinarily the statement of a party who is negotiating a purchase or sale of property that the property is of a specified value is the statement of an opinion only, or is only trade talk, and a claim of fraud cannot properly be based thereon; but, if the other party indicated in any proper manner that he was ignorant of values, and that he therefore proposed to rely upon the statement of the opposite party, and thereafter the opposite party stated as a fact that the property was of a particular value, such statement may be a proper basis for a charge of fraud, if the statement was in fact false and known to be false by the party making it.

(8) The evidence shows, without dispute, that defendant Zenft was the plaintiffs' agent for the sale of their farm. As such agent he was in duty bound to exercise the utmost good faith toward the plaintiffs, and to do the best in his ability to procure for the plaintiffs the best price and terms for the property listed with him for sale or exchange. While he was the plaintiffs' agent he had no right to act as the agent of Bolte, or accept any commission from him in the same transaction, without the plaintiffs' consent. If you find from the evidence that Zenft acted as Bolte's agent in negotiating the exchange that was made, or accepted any commission from Bolte for services performed for him, and plaintiffs had no knowledge that Zenft was acting for Bolte in disposing of the Readlyn property, or was earning a commission from him in the transaction, and they never consented thereto, then such action of Zenft was presumptively fraudulent, and plaintiffs have the right to recover back the commission of

$60 which they paid to Zenft as against him; and in such case as here stated, if Bolte knew of Zenft's conduct stated herein, and aided him in any manner to collect the $60, he would be responsible therefor the same as Zenft. But Bolte would not be responsible for the conduct of Zenft described herein, unless he had knowledge thereof, and in some way aided therein. If Zenft never acted as Bolte's agent in the negotiations in question, and only accepted the sum of $25 from Bolte, with the consent of Ross, such conduct was not fraudulent, and plaintiffs cannot properly recover back the $60 from either defendant.

Plaintiffs claim that there was a conspiracy between the defendants to defraud them out of their farm. On this claim the burden of proof is upon the plaintiffs, and, to derive any benefit from the conspiracy claim, it must be established by a preponderance of the evidence thereon; that is, by the greater weight of evidence on that issue. If such a conspiracy is established, both parties would be responsible for all wrongs done by either in carrying out the conspiracy. A conspiracy is an agreement between two or more persons to do a wrongful act. The agreement may be express or implied, and may be established by direct evidence, or by the proof of such facts and circumstances as reasonably cause you to believe that the parties were in fact working for a common purpose by a common understanding and consent.

(10) If no conspiracy is established, each defendant was responsible for his own conduct, and he was not responsible for the conduct of the other party with which he had nothing to do.

(11) If the plaintiff M. F. Ross made the exchange of properties in question on his own knowledge, inspection, and judgment, and not because of any statements or representations of the defendants, or either of them, then plaintiffs cannot recover, no matter how bad the exchange has proved to them.

(12) If the plaintiff M. F. Ross made the exchange in question after inspection of the Readlyn property, and full opportunity to ascertain the value and rental value thereof, and you find from all the evidence that he was grossly careless in failing to ascertain such values, then plaintiffs cannot properly recover herein. But, in deciding the question of gross carelessness, you should remember that Zenft was the

plantiffs' agent for the sale or exchange of the farm, and plaintiffs had the right to believe that Zenft would be true to their interests in all the negotiations.

(13) If you find from the evidence that the defendant Zenft conspired with defendant Bolte to help him defraud the plaintiffs out of their farm, and plaintiffs were so defrauded, Zenft would be liable therefor the same as Bolte, even though he got nothing out of the deal except a commission.

(14) If the plaintiffs' claim of fraud has been established against one or both of the defendants, the reasonable compensation therefor would be the difference between the fair reasonable market value of the Readlyn property as it was in fact when the bargain was completed and what would have been such value if it had been in all respects as represented by defendants, and the amount of the commission paid by the plaintiff if you find plaintiffs should recover back the commission of $60 under a former instruction; and in such case plaintiffs would be entitled to interest on the amount of your findings to the present time at 6 per cent. per annum. In deciding the amount of the plaintiffs' damages, if you find in their favor on the issue of fraud, you will not take into consideration the reasonable value of the one hundred and twenty-acre farm, except in so far as that fact may help you to understand the whole situation, and help you to decide whether or not fraud claimed in the petition is established. It is undisputed that defendant Bolte took the farm at the agreed price therefor, relying altogether on his own knowledge and judgment in reference thereto. If the price of the farm was too great, you have no right to offset the excess against plaintiffs' damages if such damages have been established.

Practically all of these instructions are complained of; but the most serious objection is to the twelfth. It is manifest, we think, that this instruction cannot be sustained. Plaintiff

1. FRAUD IN THE PURCHASE OF LAND: negligence: instructions.

in looking over the Readlyn property with a view to receiving it in exchange, and manifestly for the purpose of ascertaining its value or desirability, was held to the exercise of ordinary care, and, if he failed to exercise that degree

of care under all the circumstances, he cannot be heard to complain. *Gee v. Moss,* 68 Iowa, 318; *Riley v. Bell,* 120 Iowa, 618-627, and cases cited. Indeed, we know of no authority which justifies the instruction given which in effect relieves him, unless he was grossly careless, and counsel have cited none.

II. The rule as to the measure of damages is challenged, and the fourteenth instruction is said to be erroneous. It is true that *Mattauch v. Welsh Bros.,* 136 Iowa, 225, supports

2. SAME: meas-. ure of dam- ages.

defendant's contention. But the rule of that opinion has in later cases been pronounced unsound, and the doctrine was expressly disapproved in the more recent case of *Stoke v. Converse,* 153 Iowa, 274. The court, in this latter opinion, reviews all the decisions, and finally announces the rule in accord with the instructions given by the trial court. The testimony as to the value of plaintiff's property was admissible, it would seem, under our previous cases, but not for the purpose of fixing the measure of damages. See cases cited in *Stoke v. Converse, supra; Warfield v. Clark,* 118 Iowa, 75; *Durward v. Hubbell,* 149 Iowa, 722; *Vaupel v. Mulhall,* 141 Iowa, 365.

*Vaupel v. Mulhall,* 141 Iowa, 365, fully considers all the matters involved in the proposition now under discussion, and supports the trial court in its rulings on the testimony and the instructions relating to the measure of damages.

III. Although both fraud and conspiracy were charged, the latter was merely for the purpose of fixing responsibility

3. SAME: fraud: conspiracy: instructions.

upon both defendants, and this the trial court properly presented to the jury. There was no need in the case for any further differentiation between actions of conspiracy and for fraud.

While it is true that representations as to value, which are generally expressions of opinion, may not, as a rule,

be considered a fraud, yet they may be made under such

**4. SAME: representations of value.** circumstances as amount to a fraud on the buyer, and the trial court correctly so instructed. *Mitchel v. Moore,* 24 Iowa, 394; *Holmes v. Clark,* 10 Iowa, 423; *Mattauch v. Walsh,* 136 Iowa, 225; *Hanson v. Kline,* 136 Iowa, 101; *Brown v. Holden,* 120 Iowa, 195; *Hetland v. Bilstad,* 140 Iowa, 411; *Door v. Cory,* 108 Iowa, 725.

Other matters need not be considered at this time.

For the errors pointed out, the judgment must be and it is—*Reversed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.