VAN VLIET FLETCHER AUTOMOBILE COMPANY, Appellee, v. C. C. CROWELL, Appellant.

**FRAUD: Contract Induced by Fraud—Affirmance—Right to Recover**
1 **Damages.** Affirmance of a contract after full knowledge that it was induced by fraud bars the right to rescind, but waives neither the fraud nor right to recover damages. For instance, one fraudulently induced to buy a note secured by mortgage may affirm the contract after learning of the fraud, foreclose the mortgage, and recover the deficit in damages.

**FRAUD: Representations as to Value—When Actionable.** Repre-
2 sentations as to value may constitute actionable fraud when the parties do not have equal opportunity to know the truth, and the one with superior opportunity makes the representations, intending them to be taken as a fact and as an inducement to the sale.

PRINCIPLE APPLIED: Plaintiff bought a fourth mortgage on land situated in a distant part of the state. The land was covered with snow, which fact was in the minds of the parties as preventing an adequate inspection. The evidence justified a finding that the holder of the mortgage stated that he had been over the land; that he knew its character; that it was worth, and that the owner had been offered, $85 per acre for it; that it was worth $20,000 over all incumbrances; and that the buyer of the mortgage could rely on such statements of value. The holder of the mortgage did nothing to prevent the purchaser from examining the land. *Held*, finding of actionable fraud was justified.

FRAUD: Scienter—Sufficiency of Evidence to Show. Evidence reviewed and held sufficient to carry the question of *scienter* to the jury.

FRAUD: Purchase of Secured Note—Fraud—Affirmance—Action for Damages—Worthlessness of Security—Insolvency of Makers— Necessity of Proof. He who alleges damages must prove damages. For instance, the victim of a fraudulent contract for the purchase of a promissory note secured by mortgage, who affirms the contract and sues for damages, must show (a) the worthlessness of the security, and (b) the insolvency of the maker of the note.

TRIAL: Argument—Reading Depositions—Discretion of Court. Whether depositions may be read by counsel during argument to the jury, even by way of answer to argument of opposing counsel, is discretionary with the court.

FRAUD: Character of Land—Materiality on Value. The ''value'' of land being a material issue in an action for false representation as to the value of the land, evidence as to the character of the land was admissible as bearing on value, even though plaintiff had withdrawn his charge of false representation as to the character of the land.

APPEAL AND ERROR: Unproved Claim—Failure to Withdraw— Verdict in Justifiable Amount. Oversight in the court in not withdrawing from the jury an unproved claim does not constitute error when the amount of the verdict has full support in the evidence.

FRAUD: Sale of Real Estate Junior Mortgage Security—Damages— Value ''When Redemption Expires.'' In actions for damages for fraud in the sale of land, the material inquiry is the value of the

land "at the time of the sale." · If, however, the action is for damages for fraud in the sale of a note secured by a *junior mortgage on land,* the material inquiry is the value of the land "at the time redemption from senior mortgage could be made," the parties clearly contemplating such redemption.

*Appeal from Polk District Court.*—HON. LAWRENCE DE-GRAFF, Judge.

TUESDAY, DECEMBER 15, 1914.

REHEARING DENIED THURSDAY, JUNE 24, 1915.

ACTION for damages based upon alleged fraud in the trade of a note and mortgage, with representation as to the value of the land which secured the mortgage.—*Reversed.*

*Stipp & Perry,* for appellee.

*S. G. Van Auken,* for appellant.

WITHROW, J.—I. In February, 1911, the plaintiff traded to the defendant an automobile, the consideration received being a fourth mortgage, of the face value of something in excess of sixteen hundred dollars, on eight hundred acres of land in Winnebago county, against which were at the time existing a first mortgage of $20,000, a second mortgage of $10,000, held by other parties, and a third mortgage of $10,000, which, at the time of the trade, was owned by the defendant. Plaintiff's action, as stated in its petition, is that it did not know the makers of the fourth mortgage, nor of their financial ability, and that in making the trade, it relied wholly upon the value of the mortgage, which depended upon the value of the land covered by the mortgage. It avers that, for the purpose of inducing plaintiff to make the trade, and to accept the note and fourth mortgage in payment for the automobile, the defendant represented that he had been over the land, and was familiar with it and with its value, and that it was worth $85 an acre, and at forced sale would bring $20,000 above all incumbrances; that Turkle, the maker

of the note and mortgage, had been offered $85 an acre for the land, and had refused it. It is further alleged that defendant then said to Van Vliet, who was making the trade for the plaintiff, that he could rely on defendant's statement of value, and need not investigate the value; and that in reliance on said representation, the trade was made without plaintiff's looking at the land or ascertaining its value. The plaintiff charges that at such time the land was not worth $85 an acre, and that Turkle, the holder of the legal title, had never been offered that amount for it; that such statements and representations were false and fraudulent, and were at the time so known to be by the defendant; that the land was worth less than the prior liens. Judgment was asked for $1,650. The answer denies all fraudulent representations, and pleads that plaintiff investigated for itself, and acted and relied on its own judgment. It further claims that plaintiff caused suit in foreclosure to be brought on the fourth mortgage in April, 1911, and took judgment and decree in October, but took no valid judgment against Martha E. Turkle, one of the makers of the note, nor did they cause the real estate to be sold under execution, and since then they have done nothing to protect their rights or secure their claim, and the lien has been lost by reason of sale under foreclosure of a prior mortgage, from which the defendant did not redeem. By reason of such facts, an estoppel is claimed. A counterclaim was pleaded, going to the value of the automobile, but the issue arising out of that is not made the subject of complaint. Verdict and judgment were rendered in favor of the plaintiff and the defendant appeals.

II. Counsel for appellant states that one of the main propositions relied upon for a reversal, and for a judgment notwithstanding the verdict, is that there was a ratification

1. FRAUD: contract induced by fraud: affirmance: right to recover damages.

and affirmance of the contract by the plaintiff, and an election by him to abide by it. This claim is based upon evidence which, it is urged, shows that plaintiffs, if they did not fully know the character of the land before the deal was

closed, at least within a short time thereafter had full knowledge of such, and that, notwithstanding such knowledge, they proceeded to foreclose the mortgage. Were this a proceeding for rescission of the contract, there would be more force in this contention; but on the contrary, as we understand the pleadings and the theory on which the case was tried, it is an action not for rescission nor cancellation, but for damages based upon fraud. The remedy of one who has been damaged by fraud which induced him to enter into a contract is not alone by way of rescission. He may affirm the contract, keeping what he has secured under it, and maintain an action to recover damages. *Coe v. Lindley,* 32 Iowa 437. Affirmance of the contract does not waive the fraud nor bar the right to recover damages, but bars a subsequent rescission. *Teachout v. Van Hoesen,* 76 Iowa 113; 9 Cyc. 432, and cases cited.

Appellant has cited many authorities in support of the proposition that where a party desires to rescind a contract on the ground of fraud, he must, upon the discovery of the fraud, announce his purpose, failing in which he will be deemed to have ratified the contract. That rule is recognized by the authorities generally to be controlling in actions to rescind; but is not governing in cases where, while accepting the fruits of a contract, one seeks to recover damages for fraud inducing it, whereby his benefits under it are lessened or destroyed. The appellee, as was its right, instituted foreclosure proceedings upon the fourth mortgage. Assuming, as claimed, that, at the time it so did, knowledge had been acquired which indicated that a fraud had been done in inducing the trade, it yet had the right to secure all the benefits that could come from its contract; and if they were less than the consideration paid for it, for the deficit an action at law for damages could be maintained, within the time required by statute for bringing suits in such cases. This conclusion covers the questions of waiver, estoppel, and election of remedies discussed by counsel.

III. The claim is made that, under the record, there is no proof of statements or representations which constitute fraud; that no trick or artifice was resorted to in order to prevent the appellee from investigating and ascertaining the value of the land; that the statements relied upon as being fraudulent were at most mere expressions of opinion, and that the appellee took time after the offer to ascertain the condition and had full opportunity before completing the transaction to gain the necessary information to guide it in making the trade. Comprehended in this defensive claim are several elements which require separate consideration. The fraud relied upon in this case is in the statement of the value of the land. An amendment to the petition, alleging misrepresentation as to the character of the land, was withdrawn, and the cause was submitted upon the question of fraud in respect to representation of value alone. There are many cases which hold to the rule that an expression of opinion as to value of property will not ordinarily sustain an action for false representations. As sufficient to show the rule see *Bossingham v. Syck,* 118 Iowa 192; *Garrett v. Slavens,* 129 Iowa 107. But there are also many authorities to the effect that where the representation of value is intended to be taken as a fact, and as an inducement to the trade, the parties not having equal opportunities to know the truth, it may amount to a fraud on the buyer. *Ross v. Bolte,* 165 Iowa 499, *Mattauch v. Walsh Bros.,* 136 Iowa 225; *Hetland v. Bilstad,* 140 Iowa 411; *Dorr v. Cory,* 108 Iowa 725. It is under the rule of the cases last cited that appellee claims the right to recover, and the instructions of the trial court upon this branch of the case are based upon it.

While in this case there was, as between the parties to this action, no sale or trade of the real estate, there was the transfer of a security, the value of which, it is claimed, depended alone upon the value of the real estate against which

2. FRAUD: representations as to value: when actionable.

it was a lien; and a statement of value constituting a representation of a fact would not be actionable if the land was yet of sufficient value to satisfy all incumbrances against it, including the transferred mortgage. But if the land was of a value insufficient to meet the demands of the lien holders, if fraud as charged was committed, it would be actionable.

The proof on the part of the plaintiff tended to support the charge that representations were made by appellant to Van Vliet, substantially as pleaded, as to value, that appellant had been over it and knew its character, and that Turkle, the owner, had been offered $85 an acre for it. In the cross-examination of Van Vliet, he stated that Crowell, the appellant, did not prevent him from going up to look at the land, but that he gave him such assurance that he did not think there was any need of going. Substantially the same testimony was given by Fletcher, the partner of Van Vliet. From this it is claimed that there was no act of the appellant which could properly have prevented the fact of value from being ascertained before the trade was completed, and, therefore, a charge of fraud could not be based upon what was said. The transaction between the parties was in Des Moines, where they both resided. The land was in a distant part of the state. It was winter and snow was on the ground, and this was referred to by the parties in their talk preceding the agreement, by Van Vliet especially, as a reason why by inspection he could not determine value, and, as he claims, connected with the statement of appellant in stating its value. It could not, therefore, be said as a conclusion of law under the facts that the means of knowing the value were equally open to both, and the cases which determine rights under such conditions do not apply. The fact that after the trade Van Vliet was in Winnebago county, where he had opportunity to see the land, was not the measure of his duty as to a contract entered into prior to that time.

Upon the question as to Crowell's knowledge of the value of the land at the time of the alleged representations to Van

Vliet, there is evidence by H. H. Armstrong to the effect that

**3. FRAUD: scienter: sufficiency of evidence to show.** Crowell at one time came to his office on some other business, and, in the course of the conversation, stated that he had a $10,000 mortgage on a Northern Iowa farm to trade. The farm was known to Armstrong, and upon being told by Crowell that he had traded a fourth mortgage on the land to the Van Vliet Fletcher Company, Armstrong said, ''Those poor fellows won't get anything for that,'' upon which Crowell smiled, and said he did not think they would. This, in connection with facts as to value and the exhaustion of the value in the proceedings for foreclosure of prior mortgages, afforded proof of *scienter* sufficient to take the question of fraud to the jury.

IV. Instructions Nos. 1 and 2 are criticised, not that they do not state correctly abstract rules, but that in giving the elements necessary to be proven in this case was included that of knowledge of the fraud on the part of the one committing it. The question raised by this assignment of error is met by what we have said in the foregoing division of this opinion. Criticism is also made of the failure to instruct upon the questions of waiver, ratification and estoppel, discussed in the second division, and what we have there said renders it unnecessary to further comment upon the question of omitted instructions.

V. In the petition, it is averred that the note of Perry B. Turkle and Martha E. Turkle and the said fourth mortgage securing the same are, and were at the time, of no value.

**4. FRAUD: purchase of secured note: fraud: affirmance: action for damages: worthlessness of security: insolvency of makers: necessity of proof.** It is argued by the appellant that it has not been shown that the makers are not solvent; also that there is a failure in proof of damages. There was no proof as to the financial ability of the Turkles. The consideration for the trade between the parties was the note and mortgage which were transferred to the plaintiff. The mortgage purported to represent an equitable interest in real estate, and that the value of the land was in

excess of all liens. While it does not appear that any account was taken of the ability of the makers of the note to pay it, in the event of a failure of the security, where, as in this case, relief is sought not by way of rescission of the contract, but by bringing an action for damages based upon fraud, the plaintiff yet holding the consideration received in the trade, the measure of recovery would be not necessarily the full amount of the note and mortgage, but such amount as the face value of the paper would be reduced by its actual value. Assuming there to have been, as claimed, an entire failure in the value of the equity in the real estate, there might be value in the promissory note signed by the Turkles, and if there was such, it would be the duty of the plaintiff to allow and a right of the defendant to have credit for that value. Even though it may have been, as claimed, that appellee relied alone upon the value of the real estate security, that would not, in an action for damages without rescission, relieve from the duty of accounting for the reasonable value of the property which was received in the trade and retained. The insolvency of the makers of the note, before recovery of the full consideration could be had, was, therefore, necessary to be shown. The question was raised in the lower court in the motion for a new trial and the ruling was adverse to the appellant. In this, there was error.

VI. During the argument to the jury, counsel for appellee made reference to the testimony of a witness, Thompson, whose deposition was read at the trial. Counsel for appellant, in his argument and in reply to the argument for the appellee, desired to read a few questions and answers from the deposition, but, upon objection, was not permitted to do so. This refusal is assigned as error. While this court, in *Goodson v. Des Moines,* 66 Iowa 255, held that it was error to refuse such a request, in the later case of *McConkle v. Babcock,* 101 Iowa 126, it was held that the question was one of discretion in the trial court. The latter case was based upon the offer of transcribed portions of the evidence, but

5. TRIAL: argument: reading depositions: discretion of court.

differs in effect in no way from the offer of part of a deposition. There was no error in this respect.

VII. In one of the instructions given by the trial court, the jury were permitted to consider, as bearing upon the value of the land, evidence which had been introduced as

6. FRAUD: character of land: materiality on value.

to its character. In an amendment to the petition, plaintiff had claimed that there were false representations in terms as to the character of the mortgaged land, but their amendment was withdrawn. No statement of that claim was made to the jury. Many witnesses had testified as to value, and had described the land with some particularity. We discover no error in the instruction as limited. Value of real estate necessarily depends to some extent upon its quality, and proof of that fact is legitimate.

VIII. In the petition, claim was made for $1,500, the amount of the mortgage, as the measure of damages, with the further sum of $150 as expense incurred in the foreclosure.

7. APPEAL AND ERROR: unproved claim: failure to withdraw: verdict in justifiable amount.

No proof was offered in support of the second item. In the statement of the issues, that claim was not submitted, but the amount of damages claimed was stated in the aggregate given in the petition. While it would have

been proper for the trial court to have subtracted the unproved claim from the total, there was no error in failing to do so; for the proof in support of the charge fully justifies the verdict in the amount returned, which was $1,400, and no prejudice resulted.

IX. Defendant offered evidence to prove that there was an increase of the value of the land from February, 1911, the time of the trade, to July, 1912, which was the expiration

8. FRAUD: sale of real estate junior mortgage security: damages: value "when redemption expires."

of the redemption period under the foreclosure proceedings. The evidence was not admitted and error is assigned. The theory evidently adopted by the trial court in its ruling, and also in the instruction as to the

measure of damages, was that the test was the value of the

land at the time of the transaction. As to land transactions, this undoubtedly is the rule. *Stoke v. Converse,* 153 Iowa 274; *Ross v. Bolte, supra.*

The rule does not directly apply to cases of this nature. The sale or trade was not of the real estate, but of an equitable right against it, subject to other liens. It could not be said that, if the value had actually been in excess of all liens, representation of larger value would be actionable. Nor can it be said that the sole measure of the plaintiff's right was the value at the time of the trade. The transaction contemplated that the superior rights of other persons in the real estate should first be determined and satisfied, before the fourth mortgage could be paid. That may have been by way of redemption, by independent proceedings in foreclosure, or by taking up superior liens by purchase and assignment. In this case, the plaintiff carried proceedings to judgment in foreclosure, but no farther. The second mortgage was foreclosed, sale was had under it, and rights of redemption arose. In exercising that right, the determination would be as a fair business proposition, and as the statement of a legal right, not what the security was worth at some prior time, but its value at the time of redemption. If then sufficient to meet all claims, no damages could result, for that very situation must be held to have been contemplated. If not sufficient, the deficiency, if the note itself were of no value, would be the measure of damages. Having permitted foreclosure sale to be made under the second mortgage, the plaintiff was not thereby deprived of its right under the fourth mortgage; and that right and its measure must be determined as of the time when it could have been exercised. In this view, evidence as to the value of the real estate at the time when redemption could have been made was competent and should have been received.

For the errors noted, the judgment is—*Reversed.*

LADD, C. J., DEEMER and GAYNOR, JJ., concur.