L. A. MICHAELSON et al., Appellees, v. GUST SCHULKE, Appellant.

**FRAUD:** Reliance on Fraud—Inspection Following Representations —Effect. One who makes an unimpeded examination of premises, prior to purchase, and after certain false representations as to value had been made to him by another, may not thereafter assert that he relied on such false representations.

*Appeal from Ida District Court.*—FRANK M. POWERS, Judge.

MONDAY, JUNE 18, 1917.

SUIT to recover upon a promissory note alleged to have been given for a commission. Defendant answered and set up a counterclaim for damages. He had the burden of proof in the trial court. At the close of the testimony adduced by him, the court sustained a motion to direct verdict against defendant. He appeals.—*Affirmed.*

*Charles S. Macomber,* for appellant.

*Elwood & Tourgee,* for appellees.

FRAUD: reliance on fraud: inspection following representations: effect.

SALINGER, J.—I. The petition alleges that, about the 15th of May, 1911, defendant made and executed a promissory note to the plaintiffs, and judgment is prayed. The answer admits the execution of the note, but says that plaintiffs are not entitled to recover upon same, because it was given in payment of a commission to real estate brokers for making an exchange of a farm owned by defendant for another farm near Sutherland, Iowa, which said agree-

ment was made in 1911, in the course of which transaction, the holders of the note practiced deceit and fraud upon defendant. The counterclaim sets up a claim for damages caused by such alleged fraud.

1-a

There is evidence that defendant was physically coerced into signing the contract of exchange. It is utterly incredible and self-contradictory. But, at all events, no such matter is covered by the pleadings.

There is a plea that the plaintiffs were guilty of double dealing, and were in fact the agents of Holst and concealed that fact from defendant. To support this, there is no evidence except that defendant did not know that plaintiffs were acting for Holst. None that they were thus acting.

There is no evidence that plaintiffs represented that the O'Brien County land was worth $5.00 an acre rental, or was renting for that, or if such representation was made, that same is false.

II.   Both the pleadings and the sustained motion to direct verdict for plaintiffs are very lengthy. It suffices to say that the controlling question is whether defendant should prevail on the issues tendered by answer and counterclaim, because of the claim that plaintiffs fraudulently represented the O'Brien County land to be worth $150 an acre, and that same would sell for that, and thereby induced defendant to contract. Reliance upon that is expressly pleaded, and practically in terms of exclusion. And defendant says, "It was just the price of the land" that he is complaining of. The error points present practically just that; the argument *in extenso,* that only. On this head, the state of the evidence is this:

Defendant was the owner of a 160-acre farm in Ida County, and he and his wife maintained a homestead thereon. Some negotiations were had concerning the exchanging this farm for one of 240 acres in O'Brien County. De-

fendant and one Holst, alleged to be the owner of the O'Brien County tract, entered into written agreement. The effect of it is that the O'Brien County land was bought by defendant at $150 an acre, and that he transferred his interest in the Ida County land at $165 an acre. The wife of defendant did not sign this writing.

The jury could find that defendant was born in Germany, and came to this country 23 years ago; that Michaelson asked defendant to sell his land, and that defendant said he would sell it if he got $165 an acre; that there never was any talk about trading, and that, in the opinion of defendant, he did not trade his land; that defendant did not call it a trade; that Michaelson was to sell defendant's land and buy defendant another piece; and that, when defendant signed the contract, Michaelson was selling defendant's land, and promised that defendant was getting $165 an acre for it. It could find that, while Michaelson was showing defendant the farm, he said he "knew all about it;" that he told defendant nothing about there being any sand on the O'Brien County land, and said that the transaction constituted a "good deal" for defendant. The jury could find that Michaelson said that the O'Brien County land was worth and would sell for $150 an acre, and find that, just before the time when the contract was signed, plaintiff, Holst and a banker called on defendant and told him how much money he would make out of the deal. Michaelson took defendant to Sutherland to show him the land, and told him he was going to get that land for him, describing it as the land that would sell for $150. This was before the contract was signed. Defendant went to find out "how much the land sells for." He says that, when he saw the land, it was a nice day, and about two in the afternoon; he remained about half an hour, "a little on the east side." He could see "just one corner of it." Michaelson did not tell defendant to walk no farther, but he went no farther

than Michaelson did; he would not walk alone, because it was a strange country, and he went just where Michaelson did. Defendant looked at all the buildings.

Defendant says that the front part of the eighty is very rough; that he was on the rough part and "saw all what the land was;" that Michaelson showed him all the roughest of the land; defendant saw it and "knew the land all right;" that he saw some stone; that there was just one rough place on the land, by the house; and that the front part was bad gravel and the back part flat, so that water could not get off. He says, also, that the inspection was made on Sunday, when no one was around, and defendant could see nobody; that "they did not give me any time;" that Michaelson just kept him there alone and did not allow him to see anybody; that he introduced him to nobody and brought him to see nobody; that defendant asked Michaelson where the owner was, and was told that he lived in town, but defendant did not ask to stop in town or anywhere; that they did not enter the house. On the other hand, he admits that Michaelson wanted to show defendant in, but he wouldn't go in; did not like to go in there and look everything over, "and the woman in there." He admits that he saw a man on the place; that Michaelson told defendant who he was, but defendant did not talk to him, though they shook hands. Finally, he admits that he told no one that he wanted to see anything else on the farm. He says: "I did not tell nothing what I wanted to see. I said, 'Let's go now, so we can get home.'"

As to reliance, when the parties talked of making contract, it was also arranged that defendant should first see the O'Brien County land, which was, at that very time, said to be worth $150. Yet defendant says he was "standing" on the word of Michaelson that said land was worth $150 an acre; that he took his word and believed him; that he "would not pay that if he did not lie to me." On the other

hand, it appears without dispute that, when Michaelson stated that the O'Brien County land "sells" for $150, the wife of defendant said, in the presence of her husband, that she didn't believe it; and that they wanted to go to town before contract signing to find out what the contract meant.

There is testimony by one witness that the market value of the Holst land in the spring of 1911 was $115. The same testimony is given by another witness. This witness, however, testifies that, somewhere about that same time, or a little later, he sold his own farm, not particularly better than the one in inquiry, for $155 an acre. The third witness gives the value as from $115 to $120 an acre; says there is no particular fault with the farm, but that $120 was the most it was worth in the spring of 1911. There is no evidence that plaintiffs knew that the farm was not worth and salable for the sum they are alleged to have represented.

### 2-a

Reduced to its lowest terms, when the testimony closed, it appeared that the jury could find that the plaintiffs did say that the O'Brien County land was worth $150 an acre and would sell for that, and that, if the exchange was made, it would be advantageous to the defendant; that the wife of defendant declared, in his presence, that she didn't believe this; that an arrangement was made for an inspection, and that thereafter the contract was to be signed, if at all; that an inspection was made; that, while pursuing it, defendant had full opportunity to investigate the value of the land; that, for all that appears, the plaintiffs knew no more about the land than defendant did, and had no greater opportunity to examine; that, if defendant had at the time made the examination he made later, he would have ascertained all that he claims now to have ascertained; that, in the opinion of three witnesses, the land was not worth in the market above from $110 to $120, rather than

$150 an acre, and there is absolutely no evidence of scienter. On such a situation, the authorities relied upon by the appellant accomplish little.

*Jansen v. Williams,* (Neb.) 20 L. R. A. 207, holds that certain conduct shows that defendants did not act in good faith towards their principal, and were, therefore, not entitled to a commission. *Tyler v. Sanborn,* (Ill.) 4 L. R. A. 218, involves the setting aside of a conveyance which the agent got for his wife after making a failure of selling to another on behalf of the principal. *Hegenmyer v. Marks,* (Minn.) 32 N. W. 785, is a case where an agent authorized to sell and keep all above a certain sum for himself found that the property had been made more valuable through a building of which the principal did not know, and it is held that the principal had a right to have the sale made by the agent rescinded, and to have a reconveyance. *Norris v. Tayloe,* 49 Ill. 17, holds that, if an agent induce his principal to sell to another for an inadequate sum, without disclosing the discovery of valuable ore deposits, the principal may have the conveyance set aside. In *Tilleny v. Wolverton,* (Minn.) 48 N. W. 908, an agent, with others, bought the property which he was to sell on a fixed commission, and there was a resale at a big advance. It is held that the principal can compel this agent to account for the part of the price he received through the resale. In *Cannell v. Smith,* (Pa.) 21 Atl. 793, plaintiff paid the agent a commission for the sale of his property, in ignorance of the fact that he was also an agent of the purchaser, and plaintiff recovered back the amount paid. *Laverty v. Snethen,* 68 N. Y. 522, holds that, where one who has a note put in his hands to discount delivers it to another who appropriates it to his own use, the bailee is liable as for a conversion of the note.

*Pratt v. Allegan Circuit Judge,* (Mich.) 143 N. W. 890, is authority merely for the proposition that a representa-

tion that property would readily sell in a certain market at a given price is a representation of a fact, and, if relied upon, may be made the basis of an action grounded on false representations. *Hetland v. Bilstad,* 140 Iowa 411, holds that while, as a general rule, mere expressions of opinion as to the value of property when standing alone do not constitute actionable fraud, yet, where the property is so situated that the parties do not stand on an equal footing, and the seller knows that reliance was placed upon his statements, his representations as to the value, if false and made with intent to deceive the purchaser, amount to an affirmation of the fact upon which fraud may be predicated. In *Ross v. Bolte,* 165 Iowa 499, we define the measure of damages when there is a false representation as to value wholly relied upon, and hold that, although representations of a vendor as to value are generally mere expressions of opinion, yet, where a buyer of a house indicated that he was ignorant of values at that place, and therefore proposed to rely upon the vendor, and the vendor thereupon stated as a fact that the house was worth a certain amount, and that its rental value was a certain amount, such representation may be a proper basis for a charge of fraud. It is held in *Van Vliet Fletcher Auto Co. v. Crowell,* 171 Iowa 64, that the rule that an expression of opinion as to the value of property will not ordinarily sustain an action for fraud does not apply where the representation was intended to be taken as a fact and as an inducement to the trade, where the parties do not have equal opportunity to know the truth. In *Gustafson v. Rustemeyer,* (Conn.) 66 Am. St. 92, it is ruled that the general rule prevails, in the absence of special knowledge of the value possessed by one and entirely relied upon by the other, and that the mere false representation as to the value of the real estate, knowingly made by the seller to the buyer, is not actionable unless the buyer has been fraud-

ulently induced to forbear to inquire as to its truth. *Mc-Clanahan v. McKinley,* 52 Iowa 222, is merely an affirmance of the general rule. True, we held, in *Faust v. Hosford,* 119 Iowa 97, where an agent authorized to invest money on first mortgage took a second mortgage and reported to the principal that it was the first mortgage, and that she "could depend on him," that, though plaintiff might have discovered, by an examination of the records, that the mortgage was a second mortgage, she was under no obligation to do so, but had a right to rely upon this representation. But in *Lucas v. Crippen,* 76 Iowa 507, we say that, while cases may arise in which representations as to the value of an article may be regarded as statements of fact, the general rule is otherwise; and we defeat a claim arising from a negotiation for an exchange of real estate where, though the defendant made statements as to the value of his property, the right to make personal examination was reserved before dealing, to ascertain value, and a confidential agent was sent out and the exchange made upon his examination and opinion as to values. In *Hoffman v. Wilhelm,* 68 Iowa 510, the general rule is affirmed, and it is said:

"Plaintiff was in possession of the goods when the representation was made, and had full opportunity to satisfy himself of the truth or falsity of the representation. He was not justified in relying upon statements as to value."

*Bosley v. Monahan,* 137 Iowa 650, turns on the fact, among others, "that plaintiff is not warranted in relying on these representations, as he had inspected the land, and his means of the knowledge of the facts stated were as good as defendant's." In *Ross v. Bolte,* 165 Iowa 499, it is held that, on buying real property and inspecting it, the buyer cannot recover for false representations if he failed to use ordinary care in arriving at value, and that an instruction which allows a recovery unless he was grossly careless is

erroneous.    The Supreme Court of the United States ruled, in *Slaughter's Admr. v. Gerson*, 13 Wall. 379:

"Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations.    If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another."

This fairly sums up this case.

*Van Vliet Fletcher Auto Co. v. Crowell*, 171 Iowa 64, merely holds that certain evidence is sufficient proof of *scienter* to take the question of fraud to the jury, and, therefore, that such proof is necessary.    We are unable to find anything in *Hessenius v. Wetmore*, (S. D.) 153 N. W. 937, except that plaintiff is not required to set out further that an agreement lacks mutuality, if he sets out the agreement in full, and that shows lack of mutuality.

We find no error in the record, and must, therefore, affirm the action of the district court.    This disposition of the appeal makes it needless to enter upon the question of what damages might otherwise have been recoverable.—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.