GEORGE C. REMBE et. al., Appellees, v. J. B. FERGUSON, Appellant.

**APPEAL AND ERROR:** Review—Finding of Fact—Equity Cause.
1  A finding of fact on substantial supporting evidence in an equity cause is persuasive with the appellate court on appeal.

**FRAUD:** Evidence—Weight and Sufficiency. A hopeless conflict of
2  evidence on the issue of fraud, without *reason* in the record to credit the one who affirms, rather than the one who denies, leaves the charge unproven. But such *reason* may be found in the difference (a) in the mental attainments of the parties, and (b) in the considerations passing between the parties.

**FRAUD:** Acts Constituting Fraud—Fraudulent Representations—
3  Reliance—Examination of Property—Effect. An examination of property by the buyer before purchasing does not necessarily preclude reliance upon a distinct affirmation of *value* by the seller. So held where the parties did not stand on equal footing.

*Appeal from Plymouth District Court.*—WILLIAM HUTCHINSON, Judge.

MARCH 12, 1918.

SUIT in equity to rescind and cancel a contract for the exchange of lands, and for other relief. Decree as prayed, and defendant appeals.—*Affirmed.*

*Shull, Gill, Sammis & Stilwill,* for appellant.

*C. E. Gantt,* for appellees.

WEAVER, J.—At the inception of the transaction which is the subject of this litigation, the plaintff was the owner of a farm of 96 acres, in Plymouth County, Iowa, of the value

of $175 per acre, and the defendant, as a real estate agent, had upon his list of lands a farm of 345 acres in Minnesota, belonging to Gilbert Odland and Nels Anderson, which he was authorized to sell at $95 per acre. On June 6, 1916, Rembe and wife entered into a contract with defendant, whereby defendant undertook to convey to them the Minnesota land, in consideration of which they agreed to convey to defendant the Iowa land, subject to an existing mortgage of $4,000, and to pay him the further sum of $30,325, as follows: $5.00 in cash, $20,000 in a deferred payment, secured by a first mortgage on the land, and $10,320 in installments secured by a second mortgage thereon. On June 10th, plaintiffs made and delivered to defendant their deed for the Iowa land, and their promissory notes aggregating $10,320, the completion of the deal being delayed, apparently, for the negotiation of a loan for the installment of $20,000. At this time, also, the contract appears to have been rewritten, reciting the receipt of the cash payment of $5.00 and the promissory notes of $10,320. The writing also provides that the exchange of lands is made subject to the approval of the owner of the Minnesota property. It is further stipulated as follows:

"It is mutually understood and agreed that each party has fully informed himself and exercised his own judgment as to the kind, quality, and value of the property so to be conveyed or delivered to him, independent of any opinion expressed or representation made by any agent, middleman, or any other person in any manner whatever interested in or connected with this exchange; and neither of the parties, nor J. B. Ferguson, nor any officer, agent, or employee thereof, shall be held to be liable in damages or otherwise for any representations made as to the kind, quality, or value of said property, or any portion thereof. No alleged fraudulent representations as to the kind, quality, or value of any such property by way of inducement to the execution or

approval of this contract, or otherwise, by any person whom-
soever, shall be made the basis of the rescission of this con-
tract, or used as grounds for the failure to perform the
same; but each party hereto agrees and hereby represents,
each to the other, that he has personally informed and satis-
fied himself as to the kind, quality, and value of the property
so to be conveyed or delivered to him."

Within thirty days from the date of this contract, the
plaintiffs, alleging that they had been deceived and de-
frauded in the deal, notified defendant of their election to
rescind, and demanded the return of their deeds, promis-
sory notes, and cash payment; and, their demand being re-
fused, this action was begun.

The petition alleges various fraudulent acts and repre-
sentations by which they were induced to enter into the con
tract. They aver that the plaintiff George C. Rembe is an
illiterate man, unable to read or write, and wholly un-
familiar with business transactions; that associated with
defendant in bringing about the exchange of lands was one
Stevens, then the cashier of a local bank, with whom plain-
tiffs had done business, and in whom they had great con-
fidence; that Stevens induced plaintiffs to enter into the
negotiations with defendant; that defendant and Stevens
together took plaintiffs to Minnesota and pretended to show
them the land which they proposed to exchange; and that
they represented the land to be of good quality, and having
285 acres under cultivation, and to be of the selling value of
$125 per acre. Other representations are alleged; and, in so
far as they appear to be material, or to have substantial sup-
port in the testimony, will be more particularly mentioned
in the further progress of this opinion. Plaintiffs state that
they had no prior acquaintance with the Minnesota land, and
knew nothing of its real or market value except as they
were informed by defendant and Stevens, whose representa-
tions they believed and relied upon. They further say that

their visit to Minnesota was made in the car of the defendant, in the company of both Stevens and defendant, who remained closely with them, giving them no opportunity to make independent investigation; and they were thus led to rely and did rely upon the truth of the representations made to them. They aver, however, that said representations were, for the most part, false and misleading, and made with intent to deceive and mislead them into a transaction which, in effect, deprives them of their entire property without any consideration therefor.. They allege that, upon their visit to the land, defendant misrepresented the location of its boundaries so as to make it appear that they included other land than the tract described in the contract; that the land described in the contract is, in fact, largely of a low and swampy character; that the actual or market value of the land is only about $75 per acre; that, in truth, only about 170 acres of the land were under cultivation, instead of 285 acres, as stated by defendant; that a large portion of the land is waste and swamp and uncultivable; and that the crop production of the land for the prior year was materially exaggerated by the defendant. The defendant denies all the plaintiffs' charges of fraud and misrepresentation, and avers that plaintiffs entered into the contract relying solely upon their own inspection of the land, and upon their own judgment as to its character and value. Upon hearing the evidence offered on the part of both plaintiffs and defendant, the trial court found the equities to be with the plaintiffs, and entered a decree cancelling and setting aside the contract for the exchange of lands, the promissory notes, and the conveyance of the Iowa land, and requiring the defendant to surrender the possession of the said notes and deed, and that plaintiffs also recover judgment against him for the advance payment of five dollars, and for costs. It should also be added to this statement of facts that, on the day following the making of the original contract for

the exchange, defendant procured from the owners of the
Minnesota land an option for the purchase of it at $95
per acre; and, so far as the record shows, the legal title
still remains in Odland and Anderson.

For the reversal of the decree below, ap-
1. APPEAL AND   pellant relies upon the proposition that it is
. ERROR : re-
view : finding  without sufficient support in the record.
of fact :
equity cause.   Without extending this opinion to include a
statement of the testimony, which is quite
voluminous, we are of the opinion that it cannot be said that
there is no evidence upon which the court could properly
find the truth of at least some of the material allegations of
fraud and misrepresentation.   On the contrary, there is
evidence which, if true, affords very substantial support for
the conclusion reached by the trial court.   Such finding be-
low is, of course, not final upon appeal in an equity case, as
it would be on appeal from a judgment at law; and if, upon
a review of all the evidence, this court is clearly of the
opinion that the trial court should have discredited such
testimony, or found that an essential fact in the appellee's
case is not established by sufficient evidence, it will not hesi-
tate to order a reversal.   Where, however, the finding upon
a material question of fact turns wholly or principally upon
the veracity of witnesses who testified in person before the
trial court, we are always disposed to accord weight to its
holding thereon, and interfere therewith with reluctance.

Generally speaking, in the case before us
there is, upon most of the charges of fraud
2. FRAUD : evi-
dence : weight   and misrepresentation, a radical dispute be-
and suffi-
ciency.         tween the plaintiffs and defendant, testify-
ing as witnesses, the former affirming and
the latter denying them.   Were this all, and there were no
greater reason for crediting the affirmation than the denial,
plaintiffs would be held to have failed in their proofs, and
their action would have to be dismissed.   But there are vari-

ous other features of the case which cannot be ignored. In
the first place it is quite clear the parties did not deal on
an equal footing. The plaintiff George C. Rembe, husband
of his coplaintiff and principal actor in the negotiation on
their behalf for the exchange, is evidently a man of very
limited attainments and experience, while defendant and
Stevens were much his superior in ability to drive a profit-
able bargain. True, there was no such mental weakness as
to render him incompetent to do business or to render it
improper for defendant and Stevens to do business with
him; yet the disparity between them is a material circum-
stance to be borne in mind in determining whether he was,
in fact, overreached. And while it is also true that the law
will not relieve a man from his contract merely because it is
improvident or foolish, so long as it does not appear to have
been induced or obtained by fraud, it is also true that a
transaction whereby one obtains valuable property of
another for a grossly inadequate consideration will be care-
fully scrutinized to discover if such undue or dispropor-
tionate advantage has been fairly acquired. It is difficult
to read the record and avoid the conclusion that, by this
contract, if upheld, the defendant acquires the plaintiffs'
property, having a net value over incumbrances of about
$13,000, for a consideration which, at best, is merely nominal.
That plaintiffs' farm is worth $175 per acre, or an aggregate
of $16,800, on which there is an incumbrance of $4,000, is
not questioned; and if we may estimate the value of the
Minnesota land at the price at which its owners had listed
it with defendant, or $95 per acre, its aggregate value was
$32,775. The difference in value between the two farms,
on this basis, was $15,975, or, if the mortgage incumbrance
be added, $19,975. By the terms of the contract, however,
plaintiffs are bound to pay, not this difference merely, but
$30,325, a margin of $10,350, or an increase over the listed
price of the Minnesota land of nearly the entire value of

their equity in the Iowa land which they were putting into
the deal. The situation thus presented suggests at least that
plaintiffs were grossly improvident, or were in some manner
misled, to their material injury. But it is argued in the
first place that, in fact, there was no such inadequacy of
consideration, because the value of the Minnesota property
was much in excess of its listed price of $95 per acre. There
was evidence by several witnesses on the part of the defend-
ant that the land was worth $125 to $130 per acre; but we
are not greatly impressed by this showing. Among these
witnesses was Odland, one of the men who gave defendant
the option on the land, who admits that he had authorized
defendant to sell at $95, and that he had given the option to
defendant at the same figure. The only reason he gives for
pricing the property so far below its real value is that his
partner, or co-owner, desired to sell, and close up their
partnership deal. Another witness was the cashier of a
bank, who had formerly owned the land, and sold it,
three or four years before the trial of this case, to Odland,
Anderson, and another, for $65 per acre. Two years later,
Odland and Anderson had bought out the third owner, at
the rate of $80 per acre. It is doubtless true that the market
value of the land had increased during the three or four
years which elapsed after it was sold by the bank, but even
at $95 per acre, the increase would have been in excess of
46 per cent, and it seems hardly credible, if the increase had
been so extraordinary as to make it worth, as defendant as-
serts, $125 to $130 per acre, that defendant would have
carried so desirable a bargain on his list at $95 per acre
for a matter of three months without a buyer. Indeed, he
testifies that his principal business is buying and selling
land on his own account, and it is even more singular that
he should have omitted this chance of making a profit of $30
to $35 an acre by purchasing it on his own account, until he
had secured this contract, and should then have been so

cautious as to invest in a mere option, which he could abandon if, for any reason, that contract should not be carried out. Nor, for like reasons, is Odland's explanation that he was offering land worth $125 to $130 for sale at $95 per acre merely to let his co-owner out of the deal by which it had been purchased, a very persuasive one. Indeed, this feature of the defense seems to have been somewhat overdone. Our own conclusion from the entire record is that the land was not worth materially more than the list price which Odland placed upon it. This alone, as we have already said, would not be enough to entitle the plaintiffs to a rescission; but we agree with the trial court that the evidence warrants the conclusion that the contract was induced by material misrepresentation on the part of defendant and Stevens, who introduced him to plaintiffs, and who took active part in assisting him in bringing about the exchange. It may be admitted that, in some respects, the proof is not so broad as the allegations of the petition; but in other respects, the charge made is well sustained. The allegation of the misrepresentation of the boundaries of the land is well supported by the testimony of both plaintiffs; and while defendant denies it, Stevens, who was one of the party, and was a witness for defendant, was not asked to affirm or deny such representation. The same may be said of the witness Eilers. who was also in the company, and, if we may judge from his own testimony, was apparently aiding the effort to make the sale. Upon this issue, we are disposed to accord the preponderance of the evidence to the plaintiffs.

Again, it is shown by witnesses on both sides that defendant and Stevens assured the plaintiffs that the land had a market or selling value of $125 per acre, a price which, we think, was exaggerated by at least 25 per cent. It is argued, however, that plaintiffs, having visited the land before making the contract, cannot

3. Fraud: acts constituting fraud: fraudulent representations: reliance: examination of property: effect.

be heard to say that they relied upon defendant's representations in this respect. The rule of the authorities cited by appellant, *Michaelson v. Schulke,* 180 Iowa 201, *Bossingham v. Syck,* 118 Iowa 192, and others of like import, is well established; but it is less broad than the interpretation which counsel here place upon it. When representations of value are not made as a matter of opinion, but as of an existing fact, to influence the party to whom they are addressed to enter into a contract, and such party, not having knowledge or information to the contrary, believing and relying thereon does enter into such contract, subsequent discovery that the representation is false affords good ground for rescission. *Hetland v. Bilstad,* 140 Iowa 411; *Ross v. Bolte,* 165 Iowa 499; *Mattauch v. Walsh Bros.,* 136 Iowa 225; *Brown v. Holden,* 120 Iowa 191. Where the parties are, or have opportunity to be, equally well informed on the subject of values, or where the party charging misrepresentation is given full opportunity to inform himself on such subject, then an affirmation of value by the other party may well be treated as a matter of opinion or argument only. But the rule thus stated does not afford refuge for the defense in this case. Admittedly, plaintiffs were entire strangers to the Minnesota land, and had no opportunity to acquaint themselves therewith, except as it was afforded by their trip to the land the day before the contract was made. They were taken and accompanied on this trip by both defendant and Stevens, and while there, the party were the guests of the defendant's brother, another real estate agent. On the trip of inspection to the land, they were accompanied by the defendant and his brother, and by Stevens and Eilers. Defendant says he offered to take the plaintiffs to other farmers in the vicinity, if they desired, but they did not wish it; and on the following day, the party returned to Iowa. While this brief inspection of the land, or some part of it, may have given

the plaintiffs, as farmers, some idea of its qualities for agricultural use, it was of but little assistance to them in acquiring any information as to its market value. Stevens testifies that defendant told Rembe, on this trip, that the land was worth $125 per acre. Eilers told him he would do well if he got it at $125 per acre. Defendant himself says, "I am not sure I told them the land was worth $125 per acre, and don't think they asked me." Plaintiff George C. Rembe says that defendant said to him, "You can sell it for $125 per acre, and maybe higher." Mrs. Rembe testifies that he said the land was worth $125 per acre. So far as appears, these statements constitute all the information plaintiffs received from anyone of the market value of this land. It may have been improvident in them that they did not seek other information from more disinterested sources; but, if they believed the representations so made to them, and relied thereon, it does not lie in the mouth of the other party to say that they should have been less gullible, or that they confided in his representations at their peril. *Hetland v. Bilstad,* 140 Iowa 411. It may be conceded, as argued, that there were no confidential relations between the plaintiffs and appellant or Stevens, but it is none the less true that their acquaintance and friendship with the latter, and their general confidence in him as one in whose word they could safely trust, is not without probative value in explanation of their reliance (if such there was) upon the representations made by him and by the man to whom he introduced them. In this connection, we may also say that, while defendant testifies that he read and explained to plaintiffs the clause heretofore quoted from the contract, by which plaintiffs are made to waive or surrender their right to allege or prove fraud or misrepresentation in the procurement of said contract as a ground for its rescission or for the recovery of damages, counsel do not rely on it in argument, as affording any defense to this action. Indeed, if it is to be

considered at all, the natural, if not inevitable, effect is to arouse a suspicion of the good faith of a party who thinks it necessary, in advance of any complaint, to provide a shield against legal liability for his own misrepresentation or fraud.

Although much is said on either side with reference to other fact issues which we have not attempted to discuss, we think it unnecessary to further consider them; for, however decided, they cannot obviate the reasons we have already assigned for approving the decree appealed from.

The decree of the district court is, therefore,—*Affirmed*.

PRESTON, C. J., GAYNOR and STEVENS JJ., concur.